No. 25-1081

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MICHAEL MENDENHALL,

*Plaintiff-Appellant,*

v.

CITY AND COUNTY OF DENVER,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the District of Colorado
Civil Action No. 1:24-cv-00574
The Honorable Philip A. Brimmer

**OPENING BRIEF OF APPELLANT**

Anya Bidwell
Patrick Jaicomo
Paul Sherman
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org

*Counsel for Appellant*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF PRIOR OR RELATED APPEALS .............................. 1

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUES .............................................................. 1

STATEMENT OF THE CASE ................................................................ 2

STANDARD OF REVIEW ..................................................................... 7

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ...................................................................................... 12

   I.   As original public meaning and common-law practice show,
       the Oath or Affirmation Clause required sworn firsthand
       testimony ................................................................... 13

       A.   The text of the Fourth Amendment requires personal
           knowledge .......................................................... 14

       B.   The common law required a person with firsthand
           knowledge to swear an oath to obtain a warrant .............. 17

           1.  According to the leading English treatises, warrants
               require sworn firsthand testimony ............................ 17

           2.  Early American cases follow the treatises on the
               warrant requirements ............................................ 19

   II.   Subsequent history and tradition also show that the Oath
       or Affirmation Clause required sworn firsthand testimony ..... 23

    A.   Circuit courts confirmed the original understanding of the oath requirement ........................................................... 23

    B.   The Supreme Court confirmed the oath's personal knowledge requirement ........................................................ 29

III.   *Jones* discarded the original understanding of the Fourth Amendment and should be overruled ........................................ 31

    A.   *Jones* ignored the Fourth Amendment's text and original meaning ................................................................ 32

    B.   *Jones* relied on cases that did not involve warrants .......... 34

    C.   *Jones* was based on policy considerations and convenience, rather than constitutional text ..................... 36

IV.   Denver police searched Mr. Mendenhall's townhouse based on an invalid warrant ................................................... 38

CONCLUSION ............................................................... 39

ORAL ARGUMENT STATEMENT .......................................... 39

CERTIFICATE OF COMPLIANCE ....................................... 41

CONSTITUTIONAL AND STATUTORY ADDENDUM ...................... 42

ATTACHMENT TO APPELLANT'S BRIEF ............................... 43

  Order Granting Motion to Dismiss (ECF 31) ...................... 44

  Final Judgment (ECF 32) ............................................ 53

CERTIFICATE OF ELECTRONIC SUBMISSION .......................... 55

CERTIFICATE OF SERVICE ............................................ 56

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton,*
 521 U.S. 203 (1997) ................................................................. 7

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................. 7

*Atwater v. City of Lago Vista,*
 532 U.S. 318 (2001) ......................................................... 15, 35

*Brinegar v. United States,*
 338 U.S. 160 (1949) ............................................... 29, 34, 35

*Carabajal v. City of Cheyenne,*
 847 F.3d 1203 (10th Cir. 2017) .......................................... 7

*Carroll v. United States,*
 267 U.S. 132 (1925) ............................................................. 35

*Crawford v. Washington,*
 541 U.S. 36 (2004) ......................................... 15, 16, 34

*Dobbs v. Jackson Women's Health Org.,*
 597 U.S. 215 (2022) ............................................................. 36

*Draper v. United States,*
 358 U.S. 307 (1959) ............................................... 30, 34, 35

*Egbert v. Boule,*
 596 U.S. 482 (2022) ............................................................. 36

*Ex parte Bollman v. Ex Parte Swartwout,*
 8 U.S. (4 Cranch) 75 (1807) ........................... 19, 20, 21, 30

*Gerstein v. Pugh,*
 420 U.S. 103 (1975) ............................................................. 35

*Giles v. United States,*
    284 F. 208 (1st Cir. 1922) ................................ 24, 26,27, 29, 30, 34, 37

*Giordenello v. United States,*
    357 U.S. 480 (1958) ............................................................... 30

*Grau v. United States,*
    287 U.S. 124 (1932) ................................................... 29, 30, 34

*In re Rule of Court,*
    20 F. Cas. 1336 (C.C.N.D. Ga. 1877) ............................. 24, 25

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31,*
    851 F.3d 746 (7th Cir. 2017), *rev'd* 585 U.S. 878 (2018). ...................7

*Johnson v. United States,*
    333 U.S. 10 (1948) ................................................................ 37

*Jones v. United States,*
    362 U.S. 257 (1960)............ 1, 2, 6, 8-9, 11-12, 23, 29, 33-34, 36, 39, 40

*Marbury v. Madison,*
    5 U.S. 137 (1803) ............................................................ 14, 20

*McGrain v. Daugherty,*
    273 U.S. 135 (1927) ..................................................... 17, 29, 30

*Miller v. United States,*
    57 P. 836 (Okla. 1899)..................................................... 25, 26

*Mincey v. Arizona,*
    437 U.S. 385 (1978) ............................................................. 37

*Monell v. Dep't of Social Servs.,*
    436 U.S. 658 (1978) .............................................................. 6

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022) ............................................................................... 13

*Payton v. New York,*
    445 U.S. 573 (1980) ........................................................................... 38

*Ramos v. Louisiana,*
    590 U.S. 83 (2020) ............................................................................. 17

*Rice v. Ames,*
    180 U.S. 371 (1901) ...................................................................... 29, 30

*Schencks v. United States,*
    2 F.2d 185 (D.C. Cir. 1924) .......................................................... 26, 28

*Thompson v. Ragland,*
    23 F.4th 1252 (10th Cir. 2022). .......................................................... 7

*United States v. Burr,*
    25 F. Cas. 1 (C.C.D. Ky. 1806) ......................................................... 22

*United States v. Burr,*
    25 F. Cas. 2 (C.C.D. Va. 1807) .................................................... 19, 21

*United States v. Salvucci,*
    448 U.S. 83 (1980) ............................................................................... 9

*United States v. Tureaud,*
    20 F. 621 (C.C.E.D. La. 1884) ...................................................... 25, 26

*United States v. Watson,*
    423 U.S. 411 (1976) ........................................................................... 35

*Veeder v. United States,*
    252 F. 414 (7th Cir. 1918) ............................................... 24, 26, 27, 28

*Wearry v. Foster*,
  33 F.4th 260 (5th Cir. 2022) ............................................................ 11

*Welsh v. Wisconsin*,
  466 U.S. 740 (1984) ........................................................................ 15

*Wilson v. Arkansas*,
  514 U.S. 927 (1995) ........................................................................ 13

## Constitutional Provisions

U.S. Const. amend. IV .............................................................. 8, 14, 32

## Statutes

10 A.L.R. 3d 359, § 2[b] (1966) ........................................................ 23

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1294(1) ............................................................................ 1

28 U.S.C. § 1331 ................................................................................ 1

42 U.S.C. § 1983 ...................................................................... 5, 6, 42

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................... 7

## Other Authorities

*Broken Doors Episode 1*, Wash. Post (Aug. 30, 2022),
  https://www.washingtonpost.com/podcasts/post-
  reports/broken- doors-episode-1-/ ................................................ 11

Edward Coke, *Institutes of the Laws of England: Concerning the
  Jurisdiction of Courts* (London, M. Flesher 1644) ........................... 19

Evan Simko-Bednarski, *There Were Conflicting Accounts About Packages Sent to Breonna Taylor's Address Before Fatal Raid, Documents Say*, CNN (Oct. 15, 2020), https://www.cnn.com/2020/10/08/us/louisville-breonna-taylor-packages ........................................................................... 10

Kevin Sack, *Door-Busting Drug Raids Leave a Trail of Blood*, N.Y. Times (Mar. 18, 2017) ........................................................... 10

Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603 (2022) ............................................. 9, 23

Lester Bernhardt Orfield, *Criminal Procedure from Arrest to Appeal,* (1947) .................................................................................. 24

Matthew Hale, *Historia Placitorum Coronae: The History of the Pleas of the Crown* (Sollom Emlyn ed., London, E. & R. Nutt & R. Gosling 1736) .... 18, 19

Richard Van Duizend, et al., *The Search Warrant Process: Preconceptions, Perceptions, Practices* (1985) .................................... 10

Robert J. Reinstein & Mark C. Rahdert, *Reconstructing Marbury,* 57 Ark. L. Rev. 729 (2005) ........................ 20

Scott D. Gerber, *Law and the Holy Experiment in Colonial Pennsylvania*, 12 N.Y.U. J.L. & Liberty 618 (2019) .......................... 14

*The Conductor Generalis: or, the Office, Duty, and Authority of Justices of the Peace* (James Parker ed., New York, Hugh Gaine 1788) ............................ 18

Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547 (1999) ................................................. 28

U.S. Dept. of Justice, *Attorney General: Charles Lee*, https://www.justice.gov/ag/bio/lee-charles .......................................... 20

William Hawkins, *A Treatise of the Pleas of the Crown: or, a System of the Principal Matters Relating to that Subject, Digested Under Their Proper Heads*
(London, E. & R. Nutt & R. Gosling 3d ed. 1739)................... 18, 19, 22

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related cases involving this appeal.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff-Appellant Michael Mendenhall asserted claims under the Fourth Amendment to the United States Constitution. The district court entered final judgment for Defendant-Appellee City and County of Denver on February 4, 2025. On March 5, 2025, Mr. Mendenhall filed timely notice of appeal of the final judgment dismissing with prejudice all of his claims for relief. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

As originally understood, the Fourth Amendment prohibited the issuance of warrants that were not supported by an "Oath or affirmation" given by a witness with firsthand knowledge. But in *Jones v. United States*, 362 U.S. 257 (1960), the Supreme Court broke with this original understanding to hold that under the Fourth Amendment search warrants may be issued even when probable cause is supported without such evidence. The issues presented for review are:

1

1. Was the warrant to search Mr. Mendenhall's townhouse, which was based entirely on uncorroborated hearsay, consistent with the Oath or Affirmation Clause of the Fourth Amendment?

2. Should *Jones* be overruled?

## STATEMENT OF THE CASE

Michael Mendenhall runs one of Denver's most successful staffing agencies out of a converted townhouse at 1748 Blake Street, Denver, Colorado 80202. App. at 9–10, ¶¶ 13–14. Around 10:00pm on March 10, 2023, Mr. Mendenhall was relaxing after work at the townhouse with a friend when he heard women screaming and a man yelling just outside his front door. *Id.* at 10, ¶¶ 18–19. The door even rattled, whether from the noise itself or someone jostling against it. *Id.*, ¶ 19.

Fearing for the women's safety, Mr. Mendenhall grabbed an autographed commemorative All-Star game baseball bat and opened the door to investigate. App. at 10, ¶ 20. Outside, Mr. Mendenhall found a strange and shabbily dressed man—now known to be Sean Horan— sitting on Mr. Mendenhall's stoop with two dogs. *Id.*, ¶ 21. Mr. Horan was yelling at a group of women. *Id.* Mr. Mendenhall told Mr. Horan to leave, but Mr. Horan refused and threatened to call the police. *Id.* at 10–11,

2

¶¶ 22–24. Mr. Mendenhall returned inside. *Id.* at 11, ¶ 25. Mr. Horan called 911 and waited across the street. *Id.*, ¶¶ 26, 28.

Officers arrived at the scene shortly before 11:00pm on March 10. App. at 11, ¶ 27. Mr. Horan immediately announced to the officers that he would like to press charges against Mr. Mendenhall. *Id.*, ¶¶ 27, 29. When the officers began to question Mr. Horan, his story was odd and inconsistent: he was in the area because he "need[ed] to walk," despite living fifty miles away, *id.*, ¶¶ 31–32; he could not say for sure how many women (two or five) were in the group at which he was yelling, *id.*, ¶ 35; and he was carrying a gun but nevertheless claimed to have felt threatened by Mr. Mendenhall, *id.* at 12, ¶¶ 36–38.

Rather than asking follow-up or clarifying questions, the officers went to Mr. Mendenhall's townhouse and arrested him as soon as he opened the door, securing him in handcuffs and taking him to a squad car across the street. App. at 12, ¶¶ 40–41. Then, the officers called Detective Nicholas Rocco-McKeel and relayed Mr. Horan's incredible story so that he could obtain a search warrant for Mr. Mendenhall's townhouse to seize the bat. *Id.*, ¶¶ 42–43.

Detective Rocco-McKeel never spoke to Mr. Horan. App. at 12, ¶ 43. Instead, following the policies and procedures outlined in the Denver Police Department Operations Manual, he prepared a search warrant application and affidavit, relying entirely on the facts told to him by the other officer about what Mr. Horan had told that officer. *See id*., ¶ 45. The Denver Police Department Operations Manual Section 107.01(8)(e) permits officers to "rely upon information received through an informant, rather than upon direct observation, to show probable cause." *Id*. at 13, ¶ 48. Though unclear, the affidavit appeared to allege felony menacing as the underlying crime justifying the search. *See id*., ¶ 46.

Based on this affidavit, at 12:34am on March 11, 2023, Denver County Court Judge Renee A. Goble issued a search warrant. App. at 13, ¶ 49. About twenty minutes later, Detective Rocco-McKeel entered Mr. Mendenhall's townhouse to execute the search warrant and seized his baseball bat. *Id*., ¶ 50. At no point did Mr. Horan testify before Judge Goble, file an affidavit, or otherwise swear to the facts underlying his allegations against Mr. Mendenhall. *Id*. at 14, ¶ 54. Detective Rocco-McKeel, who swore to the affidavit, neither observed any of the relevant

facts nor personally spoke to Mr. Horan. *Id.*, ¶ 56. Detective Rocco-McKeel merely repeated what another officer said Mr. Horan had said.

Mr. Mendenhall spent the night in the Denver County jail before he was released on bond. App. at 15, ¶ 58. Six days after his arrest and the search of his townhouse, Denver dropped all criminal charges against him. *Id.*, ¶ 59. Denver has not returned his bat. *Id.*, ¶ 60.

Mr. Mendenhall brought this case in the United States District Court for the District of Colorado under 42 U.S.C. § 1983 to challenge the unreasonable search of his townhouse and unreasonable seizure of his property in violation of the Fourth Amendment.[1] App. at 16–20. Mr. Mendenhall alleged Detective Rocco-McKeel violated his right to be free from unreasonable searches and seizures under the Fourth Amendment by entering Mr. Mendenhall's townhouse and seizing his bat pursuant to a warrant that was invalid because, despite the Fourth Amendment's requirement that probable cause be supported by a sworn firsthand witness evidence, the warrant was based on hearsay. He also alleged that

---

[1] Mr. Mendenhall chose to challenge only the improper, hearsay-based warrant to search his townhouse and did not challenge his arrest. This should not be taken as a concession that this arrest was consistent with the Fourth Amendment.

the City and County of Denver is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services,* 436 U.S. 658 (1978) because Detective Rocco-McKeel followed Denver's express written policy and widespread custom and practice authorizing warrant applications that rely on secondhand information to support probable cause.

Denver moved to dismiss for failure to state a claim, arguing that *Jones v. United States*, 362 U.S. 257 (1960), precluded the court from finding that the warrant to search Mr. Mendenhall's townhouse was invalid. App. at 26–29. It also raised several other grounds for dismissal in addition to *Jones*. *Id*. at 29–36.

On February 4, 2025, the District Court granted Denver's motion, concluding that the hearsay-based warrant was constitutionally satisfactory. App. at 71–72. Chief Judge Philip Brimmer noted Denver's other arguments and expressly declined to address them because, he wrote, *Jones* was dispositive. *Id*. at 70. Mr. Mendenhall timely filed this appeal to preserve his arguments that *Jones* represents a grievous misinterpretation of the Fourth Amendment, so the Supreme Court can grant certiorari in this case to overrule that decision and restore the original public meaning of the "Oath or affirmation" requirement.

6

## STANDARD OF REVIEW

This Court reviews *de novo* the grants of motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). A complaint survives a motion to dismiss unless a defendant has shown that the pleaded facts are insufficient "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up). On appeal from a district court's grant of a motion to dismiss for failure to state a claim, this Court must treat all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party—here, Mr. Mendenhall. *Thompson v. Ragland*, 23 F.4th 1252, 1254 (10th Cir. 2022).

But in litigation that seeks to overturn binding precedent, lower courts are bound to follow that precedent. *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *see also Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 851 F.3d 746, 749 (7th Cir. 2017), *rev'd*, 585 U.S. 878 (2018).

## SUMMARY OF THE ARGUMENT

The issuance of a warrant is no trivial thing. Warrants authorize armed government agents to seize persons or comb through their most private spaces. Warrants authorize the government to employ violence to accomplish these goals. There is hardly ever a situation in which the

individual is more powerless before the State than when its agents arrive armed with a warrant.

For this reason, the Framers of the Fourth Amendment carefully circumscribed the situations in which government agents would be granted these awesome powers. With a stinging memory of abuses by the Crown, they provided that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added).

This appeal concerns the Oath or Affirmation Clause of the Fourth Amendment and seeks to correct a grave misinterpretation that has robbed that vital clause of its meaning. As originally understood, the clause required firsthand witness testimony, sworn under oath. But the Supreme Court misinterpreted the Fourth Amendment in 1960 when it held in *Jones v. United States* that probable cause to issue a warrant may be established through testimony by persons having no firsthand

knowledge of the facts.[2] *See generally* Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603 (2022).

This case depicts the consequences of the Court's error: The warrant to search Mr. Mendenhall's townhouse was issued based on testimony by an officer who had no firsthand knowledge of the facts supposedly justifying the search. What's worse, the officer based this account on information provided by another officer who also had no firsthand knowledge of the facts. As a result, the judge who signed off on the warrant had no opportunity to examine the facts or their credibility to determine whether they supported the issuance of a warrant. In the end, Mr. Mendenhall's townhouse was searched and his property seized based on a preposterous, inconsistent story to which the complainant, Mr. Horan, likely would not have been willing to swear or affirm before a judge. But the warrant was still issued, and, under *Jones*, no one is accountable for this violation of Mr. Mendenhall's rights.

Luckily, in Mr. Mendenhall's case, no one was hurt. But allowing warrants based on hearsay inevitably leads to dangerous mistakes. The

---

[2] *Jones* also made a separate, important holding concerning Fourth Amendment "standing," a holding overruled in *United States v. Salvucci*, 448 U.S. 83 (1980), and not relevant here.

raid on Breonna Taylor's home, for example, led to her death. Just as in this case, the warrant for the home's search was issued based on a detective's thirdhand account—the detective testified in the warrant affidavit that an unnamed postal inspector had told him that Ms. Taylor was receiving packages from a drug dealer who was a person of interest. Evan Simko-Bednarski, *There Were Conflicting Accounts About Packages Sent to Breonna Taylor's Address Before Fatal Raid, Documents Say*, CNN (Oct. 15, 2020).[3] The postal inspector later denied to reporters ever saying anything to that effect. *Id*. Had the oath requirement been enforced and the postal officer been brought before the magistrate to relay what he directly witnessed; the warrant would never have issued.

And Ms. Taylor is not alone. As various media sources and academic studies have discovered, raids on the wrong homes that cause the deaths of innocent people are often based on thirdhand accounts of unreliable informants. *See, e.g.,* Kevin Sack, *Door-Busting Drug Raids Leave a Trail of Blood*, N.Y. Times (Mar. 18, 2017);[4] Richard Van Duizend, et al., *The*

---

[3] https://www.cnn.com/2020/10/08/us/louisville-breonna-taylor-packages
[4] https://www.nytimes.com/interactive/2017/03/18/us/forced-entry-warrant-drug-raid.html

*Search Warrant Process: Preconceptions, Perceptions, Practices* 26 (1985); *see generally Broken Doors Episode 1*, Wash. Post (Aug. 30, 2022).[5]

Mr. Mendenhall brought this case to overturn *Jones* and reestablish the vital role that the Oath or Affirmation Clause was intended to play in protecting the rights enshrined in our Constitution. He concedes that this Court is bound by *Jones* and must affirm the district court's decision granting Denver's motion to dismiss. Mr. Mendenhall files this brief, however, both to preserve this issue for further review by the U.S. Supreme Court and in the hopes of persuading the members of this panel that they, too, should call on the Supreme Court to restore the constitutional protection that *Jones* improperly erased. *See, e.g.*, *Wearry v. Foster*, 33 F.4th 260, 278–81 (5th Cir. 2022) (Ho, J., concurring dubitante) (calling on the Supreme Court to reconsider its cases recognizing absolute prosecutorial immunity).

As this brief will establish, the Fourth Amendment's Oath or Affirmation Clause requires firsthand knowledge—presented under oath—of facts supporting probable cause for a warrant. This

---

[5] https://www.washingtonpost.com/podcasts/post-reports/broken-doors-episode-1-/

11

understanding is shown by the text and original public meaning of the Fourth Amendment, Founding-era common-law practice, and a long history and tradition of court decisions applying this understanding. Only in 1960 did the Supreme Court reverse course and permit evidence outside of sworn, firsthand accounts to establish probable cause to obtain a warrant. *Jones*, 362 U.S. at 257. *Jones* ignored the text and original public meaning of the Fourth Amendment, disregarded well-established case-law, relied on rules from inapposite precedent, and departed from the text in favor of a policy-based outcome. Applying a proper understanding of the Fourth Amendment, the warrant to search Mr. Mendenhall's home was invalid.

## ARGUMENT

In Section I, we explain why the original public meaning of the Oath or Affirmation Clause required sworn firsthand testimony. In Section II, we explain how post-enactment history confirmed this understanding of the Oath or Affirmation Clause. In Section III, we show how the Supreme Court in *Jones* departed from this understanding and why that decision should be overturned. Finally, in Section IV, we show how, under a

proper interpretation of the Oath or Affirmation Clause, the search warrant issued in this case was invalid.

## I.   As original public meaning and common-law practice show, the Oath or Affirmation Clause required sworn firsthand testimony.

The U.S. Supreme Court has repeatedly held that constitutional interpretation must start with the text. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022). When interpreting the text of an enumerated provision of the Bill of Rights, courts should interpret that text in light of our tradition and history. *Id.* And, specifically, when interpreting the Fourth Amendment, courts must look to the original public meaning by analyzing "the traditional protections against unreasonable searches and seizures afforded by the common law at the time of the framing." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).

As we explain in Section A, the Oath or Affirmation Clause is not surplusage. Like the Confrontation Clause in the Sixth Amendment, it provides an important procedural protection by requiring that probable cause be established by a specific type of evidence—firsthand accounts

sworn under oath.[6] Section B further explains that according to common-law history and tradition, testimony under oath was limited to a witness's firsthand observations and could not include hearsay. Thus, the original public meaning of the Oath or Affirmation Clause is best understood to preclude hearsay testimony as a basis for establishing probable cause.

### A. The text of the Fourth Amendment requires personal knowledge.

"It cannot be presumed that any clause in the constitution is intended to be without effect . . . ." *Marbury v. Madison*, 5 U.S. 137, 174 (1803). That is no less true of the Fourth Amendment, which provides, in relevant part: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend IV. Thus, the Oath or Affirmation Clause must add something to the more general requirement that warrants be supported by "probable cause." Otherwise, it would be mere surplusage.

---

[6] For ease of description, we use the words "oath" and "sworn" to refer both to testimony that was literally sworn under oath and also similarly formal firsthand testimony provided with an affirmation, for witnesses whose beliefs prevented them from swearing oaths. *See, e.g.,* Scott D. Gerber, *Law and the Holy Experiment in Colonial Pennsylvania*, 12 N.Y.U. J.L. & Liberty 618, 650 & n.106 (2019) (explaining that in 1696, Pennsylvania constitutionalized "the Quaker preference for affirming, attesting, or declaring, rather than swearing, when an individual was asked to provide evidence or take an oath").

What the Oath or Affirmation Clause adds is a procedural requirement for the manner in which probable cause to issue a warrant must be established. As with other criminal-procedural protections in the Bill of Rights, while "probable cause" supplies the *standard of proof* for issuing a warrant, the Oath or Affirmation Clause supplies the required *method of proof*. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 50–51, 68 (2004) (noting that the Sixth Amendment supplies a particular method for determining reliability: confrontation).

This reading ensures that there is a meaningful distinction between situations in which an officer's self-assessment of probable cause is enough and those situations in which the Framers required the government to seek a warrant. Thus, for example, when an officer has probable cause to believe that a person has committed a crime in the officer's presence, the officer may arrest that person without a warrant. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). By contrast, when an officer wishes to search a person's home, that self-assessment of probable cause is not enough. The officer must first seek a warrant. *See, e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984). In those cases, the Oath or Affirmation Clause adds the constitutionally required *method* for

establishing probable cause. For testimony to satisfy this requirement it is not enough for it merely to be judged reliable. It must also be testimony of the sort that is sworn under oath, allowing a judge to seek the truth by examining the witness directly.

*Crawford,* which banned out-of-court testimony against criminal defendants, supplies a direct analogy. In *Crawford*, the Court determined that while hearsay may be reliable at trial, the Confrontation Clause provided a particular method of proof, not simply a level of admissibility of proof. 541 U.S. at 61. This method of proof involved a witness confronting the accused at trial so that the defense attorney could test the truth of the statements via cross-examination. *Id.* at 68–69.

A firsthand knowledge requirement serves a similar purpose in the context of applying for a warrant. Sworn testimony by a person with firsthand knowledge allows a judge to collect evidence by examining the accusing witness directly. Indeed, it is difficult to see how a judge could collect any evidence at all when, as here, the testifying officer is providing a third-hand report of the complaining witness's statements. It would certainly be odd to say that the officer could swear an oath to the truthfulness of statements he neither made nor heard. For that reason,

such testimony was not considered evidence at common law, let alone a sufficient basis to issue a warrant.

### B. The common law required a person with firsthand knowledge swear an oath to obtain a warrant.

Courts seeking to determine the original public meaning of constitutional provisions look to the common law, Founding-era state practices, and Founding-era legal treatises. *See, e.g.*, *Ramos v. Louisiana*, 590 U.S. 83, 88, 90 (2020). This approach applies equally to the Fourth Amendment's warrant requirement, which "was not intended to establish a new principle but to affirm and preserve a cherished rule of the common law designed to prevent the issue of groundless warrants." *McGrain v. Daugherty*, 273 U.S. 135, 156 (1927).

As we explain in Subsection 1, Founding-era common-law treatises show that the Oath or Affirmation Clause required that probable cause be based on sworn, firsthand testimony. Subsection 2 demonstrates that early American caselaw confirms this understanding.

### 1. According to the leading English treatises, warrants require sworn firsthand testimony.

The chief sources for the common-law underpinnings of the Fourth Amendment come from leading English treatises, which confirm two principles: first, those seeking a warrant must provide firsthand

testimony under oath, and second, judges should probe the evidence supplied by this firsthand testimony.

For example, in the mid-1700s, the influential English jurist Sir Matthew Hale demanded that justices of the peace "examine upon oath the party requiring a warrant." 2 Matthew Hale, *Historia Placitorum Coronae: The History of the Pleas of the Crown* 110 (Sollom Emlyn ed., London, E. & R. Nutt & R. Gosling 1736). William Hawkins agreed: The party seeking the warrant must have firsthand knowledge—"the very Person who hath the Suspicion." 2 William Hawkins, *A Treatise of the Pleas of the Crown: or, a System of the Principal Matters Relating to that Subject, Digested Under Their Proper Heads* 85 (London, E. & R. Nutt & R. Gosling 3d ed. 1739). After all, Hawkins wrote, judges issue warrants upon "Evidence," *id.* at 84—and hearsay is "no Manner of Evidence, *id.* at 431. Other secondary sources, such as manuals used by justices of the peace in the Founding-era in America, help explicate the meaning of the oath requirement. According to one such manual, a warrant may only be issued "upon examination of the fact." *The Conductor Generalis: or, the Office, Duty, and Authority of Justices of the Peace* 382 (James Parker ed., New York, Hugh Gaine 1788).

By insisting on the oath, excluding hearsay as not "Evidence," and requiring an "examination of the fact," these treatises and manuals establish that common-law warrants could only be obtained with sworn firsthand testimony. And this requirement was seen as very important. For example, warrants had been disfavored before an indictment, especially by Sir Edward Coke, another prominent legal influence in the Founding era. *See* Edward Coke, *Institutes of the Laws of England: Concerning the Jurisdiction of Courts* 177 (London, M. Flesher 1644). But when later writers such as Hale and Hawkins accepted pre-indictment warrants, they insisted on tight controls, including a sworn accusation by a person with firsthand knowledge to allow a judge to seek evidence by carrying out the examination. 2 Hale at 110.

## 2. Early American cases follow the treatises on the warrant requirements.

Early post-ratification cases confirm this understanding. One of the most prominent, *Ex parte Bollman,* involved a set of treason cases against Aaron Burr and his alleged co-conspirators, Erick Bollman and Samuel Swartwout. 8 U.S. (4 Cranch) 75 (1807). Both the arguments of counsel and the Supreme Court's decision reflect the understanding that without firsthand knowledge a warrant is forbidden. *Id.* at 110, 130.

In *Bollman*, the Court considered whether a warrant of commitment for the imprisonment of Bollman and Swartwout could issue upon mere hearsay and analyzed the issue under Fourth Amendment and common-law standards. *Id.* at 130, 136. Defense counsel, Charles Lee,[7] argued that because the warrant was not based on firsthand knowledge, it was unlawful under the Fourth Amendment. Lee stated: "No belief of a fact tending to show probable cause, no hearsay, no opinion of any person, however high in office, respecting the guilt of the person accused, can be received in evidence on this examination." *Id.* Both sides agreed that hearsay would be inadmissible to establish probable cause for a warrant. The attorney for the Government did not contradict Lee's assertions about the inadmissibility of hearsay, arguing instead that one of the statements he wanted introduced was not offered for the truth of the matter asserted, therefore dodging hearsay preclusion. *Id.* at 119.

---

[7] Charles Lee previously served as the Nation's third Attorney General, appointed by George Washington. U.S. Dept. of Justice, *Attorney General: Charles Lee*, https://www.justice.gov/ag/bio/lee-charles. Lee was among the leading attorneys of his time and successfully represented parties in landmark cases such as *Marbury v. Madison. See generally* Robert J. Reinstein & Mark C. Rahdert, *Reconstructing Marbury,* 57 Ark. L. Rev. 729 (2005).

The Court, in an opinion by Chief Justice John Marshall, avoided the hearsay issue, concluding that, even if the affidavit were true, it did not establish probable cause. *Id.* at 130–31. But three of the four Justices agreed that warrant affidavits require firsthand knowledge, and two Justices would have held that the Fourth Amendment's warrant provision requires firsthand knowledge. *Id.* at 130 ("Two judges are of the opinion that as such testimony delivered in the presence of the prisoner on his trial would be totally inadmissible, neither can it be considered as a foundation for a commitment."). Further, in a related case, Marshall identified himself as one of the other two Justices who thought the affidavit at issue was sufficient, but only because its content was based on firsthand knowledge sworn under oath; it was only "hearsay" in the sense that it presented as a sworn affidavit rather than an in-person testimony. *United States v. Burr,* 25 F. Cas. 2, 13 (C.C.D. Va. 1807) ("[T]he material facts alleged may very well be within the knowledge of the witness, although he was failed to state explicitly the means by which this knowledge is obtained.").

 Earlier in a related *Burr* case, another effort to arrest Burr provides an even clearer demonstration of the pervasive common-law

understanding that warrants could be issued only on firsthand testimony. *United States v. Burr*, 25 F. Cas. 1, 2 (C.C.D. Ky. 1806). In an affidavit, an attorney testified under oath that he had been told Burr was committing a high misdemeanor, and the government used this affidavit to ask the federal circuit court in Kentucky to issue an arrest warrant for Burr. *Id.* at 1. The court rejected the motion because the affidavit was based on the testimony of a person (the attorney) who, under oath, repeated the statements of another person who was not under oath. *Id.* at 2. Such an arrangement did not present "legal evidence"—that is, evidence sufficient to be used before a court of law. *Id.* This "legal evidence" necessarily excluded hearsay. *See* Hawkins, *A Treatise of the Pleas of the Crown*, at 439 (hearsay is "not Evidence").

Both *Bollman* and various *Burr* cases confirm the view stated in contemporary treatises and ultimately woven into the Fourth Amendment: For testimony to establish probable cause, it must be based on firsthand knowledge stated under oath.

## II.    Subsequent history and tradition also show that the Oath or Affirmation Clause required sworn firsthand testimony.

By allowing warrants to be based on statements other than firsthand knowledge of the facts, *Jones* sharply broke from this country's history and tradition. For much of the first half of the 1800s, the issue rarely arose: judges issued warrants according to the common-law rule requiring firsthand knowledge. Sacharoff, 74 Stan. L. Rev. at 665. But in the later 1800s, two major developments sparked renewed interest in the oath requirement: (1) states began charging crimes by information rather than grand jury indictment; and (2) state and federal prohibition laws spurred investigators to seek search warrants to seize alcohol. *Id.*

As we explain in Section A, these cases led circuit courts to confirm the original understanding of "Oath or affirmation." Section B shows that this understanding was reinforced by the Supreme Court.

### A. Circuit courts confirmed the original understanding of the oath requirement.

Starting in the mid to late 1800s through the early 1900s, numerous federal cases addressed the Oath or Affirmation Clause. Almost uniformly, decisions held that the clause required sworn firsthand testimony. 10 A.L.R. 3d 359, § 2[b] (1966) ("[I]t had been the rule in

23

federal courts that hearsay could not be considered in establishing probable cause for the issuance of a search warrant."); *see also* Lester Bernhardt Orfield, Criminal Procedure from Arrest to Appeal 10–11 (1947) ("[T]he weight of authority . . . [requires] an averment of personal knowledge and belief."). The courts in these cases emphasized the importance of sworn firsthand testimony. Requiring anything less would not only reduce a judge to "a performance purely perfunctory," *Giles v. United States*, 284 F. 208, 214 (1st Cir. 1922), it would also leave an accuser without a mechanism for accountability, creating perverse incentives, *Veeder v. United States*, 252 F. 414, 418 (7th Cir. 1918).

The leading case is *In re Rule of Court*, 20 F. Cas. 1336 (C.C.N.D. Ga. 1877). There, the district judge for the district of Georgia requested that Supreme Court Justice Joseph Bradley, riding circuit, clarify the standards for issuing warrants under the Fourth Amendment. The district judge was particularly concerned that arrests for violation of revenue laws were being made with too little evidence for indictment, let alone conviction, and that "[o]ne cause of this evil seem[ed] to be the fact that warrants [were] issued upon the affidavit of some officer, who, *upon the relation of others* whose names are not disclosed, swears that, upon

24

information, he has reason to believe, and does believe, the person charged has committed the offense charged." *Id.* at 1337 (emphasis added). Bradley responded that "such an affidavit"—based on secondhand knowledge—"does not meet the requirements of the constitution." *Id.* Instead, "the magistrate ought to have before him the oath of the real accuser." *Id.* Only this would allow the magistrate to "judge for himself, and not trust to the judgment of another, whether sufficient and probable cause exists for issuing a warrant." *Id.* Thus, Bradley issued a general order:

> No warrant shall be issued by any commissioner of this court for the seizure or arrest of any person charged with a crime or offense against the laws of the United States upon mere belief, or suspicion of the person making such charge; *but only upon probable cause, supported by oath or affirmation of such person, in which shall be stated the facts within his own knowledge* constituting the grounds for such a belief or suspicion.

*Id.* (emphasis added).

Other federal courts of the era came to the same conclusion: Warrants cannot issue without a sworn statement by a witness with firsthand knowledge. *United States v. Tureaud*, 20 F. 621, 624 (C.C.E.D. La. 1884); *Miller v. United States*, 57 P. 836 (Okla. 1899) (applying federal law in territorial court). Thus, in *Tureaud*, the court held that a

25

criminal information should be quashed because it "d[id] not appear, from the affidavit upon which these procedures are based, that the affiant has any knowledge whatever of the truth of the matters contained in the information; but simply that 'all the statements and averments are true as he verily believes,' i.e., that he believes them all to be true." 20 F. at 624. To do otherwise would "utterly disregard[]" the Fourth Amendment's requirement of firsthand testimony. *Id.* Similarly, in *Miller*, the court ruled that based on the text of the Fourth Amendment and Supreme Court interpretations of the same, "an arrest upon a criminal information must be supported by an oath or affirmation from someone [sic] who knows of the matter charged, and not upon an oath which is no stronger than information and belief." 57 P. at 839.

By the 1900s, the rule was applied throughout the federal appeals courts. *See Schencks v. United States*, 2 F.2d 185 (D.C. Cir. 1924); *Giles* 284 F. 208; *Veeder* 252 F. 414. In *Giles*, for example, the First Circuit closely examined, surveyed, and criticized the shift to and greater use of search warrants spurred by Prohibition. 284 F. at 210. The warrant application before it did not provide any evidence that it was based on

the officer's personal knowledge of the facts. *Id.* at 212. The court rejected

it under the Fourth Amendment oath requirement, writing:

> Our law does not contemplate that homes and businesses
> shall be thus invaded, unless and until some person takes the
> responsibility of disclosing under oath to a judicial tribunal
> facts from which such tribunal—not the applicant or affiant—
> finds probable cause to believe articles particularly described,
> and properly seizable on search warrant, are in a place . . . .
> In this case, as no facts whatever were put before the
> commissioner, he was ousted from his judicial function and
> remitted to a performance purely perfunctory. The prohibition
> agent was applicant, affiant, in effect the judge of the
> existence of probable cause, and the officer serving the writ.
> This is a very dangerous amalgamation of powers.

*Id.* at 214. *Giles* thus reinforces the view that an officer's sworn testimony

must be of the sort that would allow the officer to "testify[] as a witness

before a jury." *See id.*

The Seventh Circuit in *Veeder* provided additional explanation for

the firsthand requirement: accountability. The court quashed a search

warrant issued on the affidavit of a Federal Trade Commission inspector

who alleged that he believed certain books and records in the petitioner's

possession would be proof of financial crimes. 252 F. at 416. The court

explained that possible perjury charges for the accuser are an important

protection from unreasonable warrants: "[T]here must be consequences

for the accuser to face. If the sworn accusation is based on fiction the

accuser must take the chance of punishment . . . . Hence the necessity of a sworn statement of facts." *Id.* at 418. This echoed the common-law practice that the complainant who initiated a search warrant was accountable for the outcome of the search, including tort liability for trespass should the search come up empty. Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 651–52 (1999).

Finally, in *Schencks*, the D.C. Circuit considered a search warrant based on hearsay. The court held that warrant violated the Fourth Amendment and therefore required reversal of the conviction. 2 F.2d at 185. In particular, probable cause for the search warrant relied on reports from an informant that he had purchased drugs from the defendant. *Id.* The informant did not appear before the commissioner who issued the warrant or otherwise testify under oath. *Id.* The court explained that when police officers rely on informant reports, the informant must positively allege facts under oath. *Id.* at 186.[8]

---

[8] The court also explained the value of the real-accuser requirement: "To permit [peace officers] to search for evidence because they deposed that they had reason to believe and did believe that the law had been broken, or because they deposed that they were informed and believed that certain facts existed, would leave the home, the property, and the person of the citizen at the mercy of mere suspicion, and of misstatements and misinformation for which no one could be held accountable." *Schencks*, 2 F.2d at 187.

### B. The Supreme Court confirmed the oath's personal knowledge requirement.

When the Supreme Court had occasion to consider the question, its pre-*Jones* rulings upheld the rule that the oath requires personal knowledge. *See Grau v. United States*, 287 U.S. 124 (1932); *McGrain v. Daugherty*, 273 U.S. 135 (1927); *Rice v. Ames*, 180 U.S. 371 (1901).

In 1932, the Supreme Court in *Grau* held that, to obtain a search warrant, the Fourth Amendment requires evidence that would be admissible at trial. 287 U.S. at 128–29. *Grau* involved two affidavits: "One purported to state the facts; the other merely asserted a belief that the statements in the first were true." *Id.* at 127. The Supreme Court held that the affidavit not based on personal knowledge was "clearly insufficient," while the other did not contain enough facts to establish probable cause *Id*. *Grau* also cited *Giles* for the proposition that search warrants must be based on evidence competent for a jury at a later prosecution for the crime charged*, id.* at 128, a principle that *Giles* derived from the Fourth Amendment's oath requirement.[9]

---

[9] The Supreme Court later said this portion of *Grau* was dicta in the cases leading up to and justifying *Jones*, supposedly because "in a case in which the evidence adduced to prove probable cause was not incompetent, but was insufficient to support the inference necessary to the existence of probable cause." *Brinegar v. United States*, 338 U.S. 160, 174–75 n.13 (1949); *see also*

During this period, the Court also required firsthand knowledge for warrants under the Fourth Amendment in other contexts. *See Rice*, 180 U.S. at 375-76 (requiring personal knowledge and oath for a pre-extradition commitment warrant); *McGrain*, 273 U.S. at 156–57 (explaining that a writ of attachment for a custodial holding of a witness must satisfy Fourth Amendment with an oath and personal knowledge). And two years before *Jones*, the Court seemed to recognize that a warrant requires firsthand knowledge, forging another link in an unbroken line of cases, stretching back to *Ex parte Bollman* in 1807. In *Giordenello v. United States*, the Court disapprovingly noted that "suspicions of petitioner's guilt derived entirely from information given him by . . . other persons in Houston, none of whom either appeared before the Commissioner or submitted affidavits." 357 U.S. 480, 485 (1958).

*    *    *

---

*Draper v. United States*, 358 U.S. 307, 312 n.4 (1959). But that reading of *Grau* ignores the Court's treatment of the second affidavit—the one not based on personal knowledge—which the Court immediately dismissed as "clearly insufficient." The Court's citation to *Giles* for the principle that "[a] search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury" explains why this affidavit could be dismissed with no further analysis, and was thus necessary to the Court's ruling.

30

The post-ratification circuit and Supreme Court cases confirm the common-law understanding that the oath by which probable cause is established must be based on personal knowledge. Second-hand information cannot provide the oath or affirmation needed to support probable cause for a warrant under the Fourth Amendment.

### III. *Jones* discarded the original understanding of the Fourth Amendment and should be overruled.

At the time the Fourth Amendment was enacted, the Oath or Affirmation Clause had well-established common-law roots and was understood to require testimony based on firsthand knowledge. This understanding continued largely unchallenged through the nineteenth century. *Jones* broke with that practice, expressly ruling that judges may issue warrants based upon hearsay.

That was wrong, and *Jones* should be overruled. We recognize that this Court cannot do so. We make this argument to preserve it for further review by the U. S. Supreme Court and to encourage this Court to call upon the Supreme Court to reconsider *Jones*.

*Jones* was wrongly decided for several reasons. First, it overlooked the text of the Oath or Affirmation Clause and ignored the original meaning of the oath requirement. Second, the Court relied on naked

policy considerations and convenience, rather than appropriate interpretive standards. Finally, *Jones* was logically wrong even on its own terms.

### A. *Jones* ignored the Fourth Amendment's text and original meaning.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. This text makes clear that an oath or affirmation is foundational to the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures." And the Constitution is unequivocal and mandatory: Without an oath or affirmation, "no Warrants shall issue." Nevertheless, in *Jones*, the Supreme Court simply dispensed with the oath requirement, without quoting, paraphrasing, or even addressing it.

Because *Jones* ignored the oath requirement, it examined none of the sources the contemporary Supreme Court relies on for determining the original public meaning of constitutional provisions. There was no analysis of warrant practices in Founding-era common law. There was no analysis of legal treatises, either in the common-law era or afterward. There was no analysis of how previous rulings, including those of the

32

Supreme Court, interpreted the "Oath." Had the Supreme Court given the text—and original understanding of the text—its proper consideration, it may well have ruled consistently with virtually every previous case to have considered the issue: The Fourth Amendment Oath or Affirmation requires firsthand knowledge.

Instead, the Supreme Court looked only to the probable cause requirement, focusing solely on whether the informant's hearsay met the standard of proof—probable cause. *Jones,* 362 U.S. at 271 ("We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly."). To the Court, whether a statement was hearsay and if so, whether the informant was credible, were merely factors for the magistrate to consider in determining whether probable cause could be inferred from the informant's assertion. By focusing on the level of proof and ignoring the method of proof, *Jones* wrote the Oath or Affirmation Clause entirely out of the Fourth Amendment.

That required method of proof—sworn testimony from one with firsthand knowledge—makes good sense. When magistrates rely solely on police officers' assurances of a third-party's credibility, the neutrality of their role is at risk. *See id.* at 273 (Douglas, J., dissenting); *see also*

*Giles*, 284 F. at 215 (a judge's role cannot be "purely perfunctory"). The Oath or Affirmation Clause ensures reliability by requiring that the description of the evidentiary basis for establishing probable cause comes from a person with firsthand knowledge of that evidence. In this way, the Fourth Amendment's Oath or Affirmation Clause mirrors the Sixth Amendment's Confrontation Clause with respect to hearsay at trial. *See Crawford*, 541 U.S. at 61. As the Supreme Court wrote in *Crawford*: "[The Confrontation Clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."). *Id.*

By ignoring that probable cause is the burden of proof and examination, under oath, is the constitutionally prescribed method of meeting that burden, *Jones* departed from text, history, and tradition.

**B. *Jones* relied on cases that did not involve warrants.**

*Jones* justified its significant departure from long-established practice by pointing to two decisions issued since *Grau*: *Brinegar v. United States*, 338 U.S. 160 (1949) and *Draper v. United States*, 358 U.S. 307 (1959). But both cases are inapposite. Each concerned solely the constitutionality of arrests in public, which do not require a warrant, only

probable cause. *See Atwater*, 532 U.S. at 324; *Gerstein v. Pugh,* 420 U.S. 103, 113 (1975). Neither addressed the key constitutional requirement, the "Oath or affirmation," which in turn does require personal knowledge.

*Brinegar* dealt with the constitutionality of the warrantless arrest of a driver and his truck's subsequent search. 338 U.S. at 162. Arrests in public do not require a warrant. *United States v. Watson*, 423 U.S. 411, 417 (1976). Nor do searches of vehicles require a warrant. *Carroll v. United States*, 267 U.S. 132 (1925). Thus, the Supreme Court in *Brinegar* was only asked to consider whether hearsay could establish probable cause for warrantless searches, and it ruled that it could. 338 U.S. at 176.

Similarly, in *Draper*, the Court considered whether hearsay from an informant could amount to probable cause sufficient for a police officer to make a warrantless arrest. 358 U.S. at 308. A paid informant reported to officers that Draper was a local heroin dealer, that Draper would be arriving by train from Chicago with a fresh supply of heroin and provided a description of Draper. 358 U.S. at 309. Here again, because no warrant was involved, the Court's analysis was limited to whether the informant's reports could establish probable cause for a warrantless arrest. *Id.* at 310.

Relying on these two cases about warrantless searches and arrests, *Jones* held that there was probable cause for the warrant to search Jones's apartment. 362 U.S. at 270 ("What we have ruled in the case of an officer who acts without a warrant governs our decision here."). But this was an incomplete analysis: Probable cause is an independent requirement from personal knowledge. Hearsay may well support an inference of probable cause, but it cannot satisfy the oath requirement.

### C. *Jones* was based on policy considerations and convenience, rather than constitutional text.

*Jones* is based partly on a policy favoring police convenience. This alone should be sufficient to undermine it. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022); *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022). *Jones*'s policy argument was also wrong on its own terms.

At the heart of *Jones*'s holding is the belief that warrants should be easier for police to obtain. 362 U.S. at 270. But warrants *should* be hard to get, particularly search warrants of the home, because of the dangers inherent in the great power warrants afford:

> It need hardly be pointed out that a process issuing to an administrative official, which will authorize him at any time of the day or night to enter the home or office of any person, breaking doors, windows and opening by force anything within the premises . . . is a power capable of such oppressive

and liberty destroying use that it should be strictly guarded
and exercised.

*Giles*, 284 F. at 212. Put another way, "[t]he right of officers to thrust

themselves into a home is [] a grave concern, not only to the individual

but to a society which chooses to dwell in reasonable security and freedom

from surveillance." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

To be sure, restoring the original understanding of the Fourth

Amendment will likely make the warrant process more demanding. But

the "mere fact that law enforcement may be made more efficient can

never by itself justify disregard of the Fourth Amendment." *Mincey v.*

*Arizona*, 437 U.S. 385, 393 (1978). Convenience should play even less of

a role for warrants to search the home, because the Fourth Amendment

"reflects the view of those who wrote the Bill of Rights that the privacy of

a person's home and property may not be totally sacrificed in the name

of maximum simplicity in enforcement of the criminal law." *Id.*

In any event, to the extent policy considerations are relevant, the

Supreme Court should have also considered the substantial costs to the

public from allowing warrants to issue based on hearsay testimony of the

sort at issue in this case. By eliminating the oath requirement from the

Fourth Amendment, the Supreme Court massively expanded the power

37

of government to arrest people and search their most private spaces based on the flimsiest of evidence. This case exemplifies that threat—once a prosecutor got involved, the charges against Mr. Mendenhall were dropped. Undoubtedly, there are countless other people who, like Mr. Mendenhall, have been subject to the indignities of arrest and search based on similarly thin evidence—indignities they would not have suffered if the courts enforced the Oath or Affirmation Clause.

## IV. Denver police searched Mr. Mendenhall's townhouse based on an invalid warrant.

The search of a home requires a warrant. As the Supreme Court wrote in *Payton v. New York*, it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." 445 U.S. 573, 586 (1980) (internal quotations omitted). Detective Rocco-McKeel obtained a warrant to search Mr. Mendenhall's townhouse and seize his baseball bat without firsthand knowledge of the facts and thus could not provide the constitutionally required oath to support that warrant. The warrant was therefore unconstitutional, and the search of Mr. Mendenhall's townhouse and the seizure of his property in accordance with that warrant violated Mr. Mendenhall's rights under the Fourth Amendment.

38

## CONCLUSION

The Fourth Amendment's Oath or Affirmation Clause incorporated common-law warrant requirements, including the requirement that probable cause be established by a sworn statement from someone with firsthand knowledge of the facts. This understanding of the Fourth Amendment continued virtually without question for over 160 years. Only in 1960 did the Supreme Court reverse course and permit warrants based on hearsay, and its decision addressed neither the constitutional text nor the overwhelming weight of authority. Under a proper interpretation of the Fourth Amendment, Denver's express policy of permitting warrants to be issued without oath or affirmation supporting probable cause is unconstitutional. But for *Jones*, Denver would be liable to Mr. Mendenhall for its unreasonable search and seizure of his property. Although this Court is not empowered to give Mr. Mendenhall that relief yet, it can and should urge the U. S. Supreme Court to do so.

## ORAL ARGUMENT STATEMENT

While the outcome of this case is controlled—at this stage—by well-established caselaw, this Court and, ultimately, the U. S. Supreme Court, would benefit from oral argument, so the parties can address the relevant textual and historical flaws in *Jones*. Realtime discussion will allow this

Court to consider whatever factors it believes to be more relevant to this constitutional issue, which will aid the Court in crafting a thoughtful opinion that will, in turn, aid the Supreme Court in its examination of the weaknesses in its precedent.

Respectfully submitted,

/s/ Anya Bidwell
Anya Bidwell
Patrick Jaicomo
Paul Sherman
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org

*Counsel for Appellant*
*Michael Mendenhall*

40

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(g)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,680 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font in the body, 13-point font in the footnotes.

Date: May 29, 2025

/s/ Anya Bidwell
Anya Bidwell
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
*Counsel for Appellant*

## CONSTITUTIONAL AND STATUTORY ADDENDUM

The Fourth Amendment to the United States Constitution provides, in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Civil Rights Act of 1871, as amended and codified at 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**ATTACHMENT TO APPELLANT'S BRIEF**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00574-PAB-KAS

MICHAEL MENDENHALL,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,

      Defendant.

---

## ORDER

---

The matter before the Court is Defendant City and County of Denver's Motion to Dismiss Amended Complaint Under Rule 12(b)(6) [Docket No. 21]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff Michael Mendenhall filed this matter as a test case to overturn *Jones v. United States*, 362 U.S. 257 (1960). Docket No. 16 at 1, ¶ 1

### I.    BACKGROUND[1]

Mr. Mendenhall owns a staffing agency. *Id.* at 3, ¶ 13. Mr. Mendenhall moved his staffing agency into a converted townhouse at 1748 Blake Street in Denver, Colorado. *Id.* at 4, ¶ 14. Mr. Mendenhall's company leases the townhouse, and Mr. Mendenhall, therefore, has a property and possessory interest in the townhouse. *Id.*, ¶ 16.

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 16, and are presumed to be true, unless otherwise noted, for purposes of ruling on the motions to dismiss.

On March 10, 2023, Mr. Mendenhall stayed after business hours to set up his office computers with the help of a friend. *Id.*, ¶ 17. At 10:00 p.m., Mr. Mendenhall heard women screaming and a man yelling outside the front door of the townhouse. *Id.*, ¶ 19. Mr. Mendenhall grabbed a wooden baseball bat while his friend opened the door. *Id.*, ¶ 20. On the stoop of the townhouse was a strange man, two dogs, and a group of women. *Id.*, ¶ 21. The man was later identified as Sean Horan. *Id.*, ¶ 22. Mr. Mendenhall told Mr. Horan to leave, but Mr. Horan refused to do so. *Id.* at 4–5, ¶¶ 22–23.

After further argument, Mr. Mendenhall closed the door, and Mr. Horan called the police. *Id.* at 5, ¶¶ 24–26. Shortly before 11:00 p.m., four police officers arrived near Mr. Mendenhall's townhouse. *Id.*, ¶ 27. The officers found Mr. Horan across the street from the townhouse. *Id.*, ¶ 28. Mr. Horan told the police that he had been walking and sat on the stoop of the townhouse when he encountered a group of women. *Id.*, ¶¶ 34–35. Mr. Horan told police that, soon thereafter, Mr. Mendenhall opened the door of the townhouse and demanded they leave. *Id.*, ¶ 35. Mr. Horan told police that Mr. Mendenhall had threatened him with a baseball bat. *Id.* at 6, ¶ 36.

Four police officers went to the townhouse and arrested Mr. Mendenhall when he opened the door. *Id.* at 6, ¶ 41. The officers then decided to obtain a search warrant to search the townhouse for the baseball bat. *Id.*, ¶ 42. One officer called Detective Nicholas Rocco-McKeel, who is a police officer employed by the City and County of Denver. *Id.*, ¶¶ 43–44. The officer recounted Mr. Horan's story to Detective Rocco-McKeel. *Id.*, ¶ 43. Detective Rocco-McKeel prepared a search warrant application and affidavit that relied entirely on Mr. Horan's story, as told to him by the other officer. *Id.*,

2

45

¶ 45.  Denver Police Manual Section 107.01(8)(e) authorizes the use of hearsay to support a search warrant application.  *Id.* at 7, ¶ 48.  In particular, it provides that the "officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause."  *Id.*  In his affidavit, Detective Rocco-McKeel swore that Mr. Horan told another officer that Mr. Mendenhall had unlawfully threatened Mr. Horan with a bat, although Detective Rocco-McKeel neither observed any of the relevant facts nor spoke to Mr. Horan.  *Id.* at 8, ¶ 56.

Based on Detective Rocco-McKeel's affidavit, a search warrant was issued.  *Id.* at 7, ¶ 49.  Detective Rocco-McKeel then searched the townhouse and seized Mr. Mendenhall's bat.  *Id.*, ¶ 50.  Mr. Mendenhall was charged with felony menacing.  *Id.* at 9, ¶ 58.  All criminal charges against Mr. Mendenhall were eventually dropped.  *Id.*, ¶ 59.

Mr. Mendenhall brings two claims against defendant City and County of Denver ("Denver").  *Id.* at 10–14, ¶¶ 58–87.  First, Mr. Mendenhall brings a claim under 42 U.S.C. § 1983 based on Denver's allegedly unconstitutional policy of permitting police to use hearsay statements as a basis for establishing probable cause, which Mr. Mendenhall says resulted in an unconstitutional search of Mr. Mendenhall's townhouse.  *Id.* at 10–13, ¶¶ 67–84.  Second, Mr. Mendenhall brings a claim based on Denver's allegedly unconstitutional policy of permitting police to use hearsay statements as a basis for establishing probable cause, which resulted in an unconstitutional seizure of Mr. Mendenhall's baseball bat.  *Id.* at 13–14, ¶¶ 85–87.

On June 4, 2024, Denver moved to dismiss Mr. Mendenhall's claims, arguing that Mr. Mendenhall had failed to plausibly allege that Denver has violated his constitutional rights.  Docket No. 21.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so

4

general that they encompass a wide swath of conduct, much of it innocent," then

plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted).

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still

must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at

1286 (alterations omitted).

### III.    ANALYSIS

In his amended complaint, Mr. Mendenhall states that he is bringing "this test

case to challenge an unreasonable search of his townhouse business and an

unreasonable seizure of his property in violation of the Fourth Amendment." Docket No.

16 at 1, ¶ 1. In particular, Mr. Mendenall states that "[t]his case seeks to overturn

*Jones*, and to restore the Warrant Clause requirement of firsthand testimony to support

probable cause." *Id.* at 2, ¶ 6. Denver argues that Mr. Mendenhall's claims should be

dismissed because he has failed to plausibly allege that Denver is liable for any

violation of Mr. Mendenhall's constitutional rights. Docket No. 21 at 3.

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of

respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978).

Instead, local governing bodies can be sued directly only where "the action that is

alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at

690. "[I]t is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983."

*Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Denver makes five arguments that Mr. Mendenhall's claims should be dismissed. *See* Docket No. 21 at 5–15. First, Denver asserts that Mr. Mendenhall has failed to plausibly allege that a Denver employee violated Mr. Mendenhall's constitutional rights because the Supreme Court authorized the use of hearsay statements as a basis for establishing probable cause to search or seize a person's property in *Jones*, 362 U.S. at 269. Docket No. 21 at 5–9. While this issue is dispositive, Denver proceeds to make four other arguments. Next, Denver argues that Mr. Mendenhall has failed to identify a policy that authorized Denver police officers to rely on hearsay to obtain search warrants in a manner that violates the Constitution. *Id.* at 9–10. Third, Denver argues that Mr. Mendenhall's allegations regarding Denver police officers' use of hearsay statements in warrant applications are insufficient to demonstrate that Denver had a custom or practice of violating the Fourth Amendment. *Id.* at 10–11. Denver's fourth argument is that Mr. Mendenhall's complaint fails to plausibly allege that Denver was deliberately indifferent to any violation of Mr. Mendenhall's constitutional rights. *Id.* at 11–12. Finally, Denver argues that, even if Mr. Mendenhall were to establish that *Jones* was wrongly decided, that Denver could not have relied on *Jones* in establishing its practice of seeking warrants using hearsay, and that Detective Rocco-McKeel violated Mr. Mendenhall's Fourth Amendment rights, Mr. Mendenhall has failed to plausibly

allege that Denver caused Mr. Mendenhall's constitutional injuries because warrants are approved by judges who are not employees of the city.  *Id.* at 13–15.

The Court finds that Mr. Mendenhall has failed to establish the first element of his *Monell* claim against Denver regarding a violation of his constitutional rights by a Denver employee.  *See Jiron*, 392 F.3d at 419.  Mr. Mendenhall agrees that, considering the Supreme Court's ruling in *Jones*, his claims should be dismissed.  Docket No. 22 at 1 ("Plaintiff acknowledges that this Court must follow *Jones* and grant the Defendant's Motion to Dismiss").  It is therefore unnecessary to reach Denver's other arguments.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "To authorize a valid search under the Fourth Amendment, '[a] search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict.'"  *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000)).  Probable cause "requires a nexus between suspected criminal activity and the place to be searched."  *Danhauer*, 229 F.3d at 1006 (citing *United States v. Corral–Corral,* 899 F.2d 927, 937 (10th Cir. 1990)).  "An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity."  *Id.* (*United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998)).

In *Jones*, the Court stated that "[t]he question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be

7

50

deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another."  362 U.S. at 269.  The Court determined that "[a]n affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented," and that "hearsay may be the basis for a warrant."  *Id.* at 269, 271.  Since *Jones*, the Tenth Circuit has repeatedly held that "hearsay evidence may form the basis for a probable cause determination."  *United States v. Mathis*, 357 F.3d 1200, 1204 (10th Cir. 2004); *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990); *see also United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992).  Moreover, the Tenth Circuit has "recognized that multiple layers of hearsay may support a finding of probable cause for a search warrant."  *Mathis*, 357 F.3d at 1204 (citing *$149,442.43 in U.S. Currency*, 965 F.2d at 874 n.3).

Mr. Mendenhall alleges that "a detective with the Denver Police Department violated Mr. Mendenhall's Fourth Amendment rights when, pursuant to a search warrant issued solely on the basis of double hearsay, the detective searched Mr. Mendenhall's townhouse and seized a baseball bat that another man claimed Mr. Mendenhall had used to threaten him on Mr. Mendenhall's own doorstep."  Docket No. 16 at 2–3, ¶ 8. The constitutional violations Mr. Mendenhall identifies in his complaint are that Detective Rocco-McKeel violated his rights by searching his house and by seizing the baseball bat pursuant to a warrant issued without probable cause because it was supported only by hearsay statements.  *Id.* at 12–13, ¶¶ 77, 79, 83, 86.  The Tenth Circuit has held that "multiple layers of hearsay may support a finding of probable cause for a search warrant," like the circumstances in this case.  *Mathis*, 357 F.3d at 1204.  Accordingly,

Mr. Mendenhall has failed to plausibly allege that Detective Rocco-McKeel violated his constitutional rights.  Mr. Mendenhall's amended complaint does not adequately allege that a Denver employee committed a constitutional violation, and his complaint therefore does not plausibly state a claim for municipal liability.  *Jiron*, 392 F.3d at 419.  Accordingly, the Court will dismiss Mr. Mendenhall's claims.

IV.    **CONCLUSION**

Therefore, it is

**ORDERED** that Defendant City and County of Denver's Motion to Dismiss Amended Complaint Under Rule 12(b)(6) [Docket No. 21] is **GRANTED**.  It is further

**ORDERED** that Michael Mendenhall's first and second claims for relief are **DISMISSED with prejudice**.  It is further

**ORDERED** that Plaintiff's Unopposed Motion for Oral Argument on Defendant's Motion to Dismiss Amended Complaint [Docket No. 24] is **DENIED as moot**.  It is further

**ORDERED** that this case is closed.

DATED February 4, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00574-PAB-KAS

MICHAEL MENDENHALL,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,

     Defendant.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and
pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order [Docket No. 31] of Chief United States District Judge Philip
A. Brimmer entered on February 4, 2025, it is

ORDERED that Defendant City and County of Denver's Motion to Dismiss
Amended Complaint Under Rule 12(b)(6) [Docket No. 21] is GRANTED.  It is further

ORDERED that Michael Mendenhall's first and second claims for relief are
DISMISSED with prejudice.  It is further

ORDERED that judgment shall enter in favor of defendant and against plaintiff.  It
is further

ORDERED that defendant is awarded its costs, to be taxed by the Clerk of the
Court, pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

ORDERED that this case is closed.

Dated: February 4, 2025.

FOR THE COURT:

Jeffrey P. Colwell, Clerk


By s/ S. Grimm _____
     Deputy Clerk

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made under Tenth Circuit Rule 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3) the digital submissions have been scanned for viruses by Bitdefender Endpoint Security Tools, version 7.4.4.159, last updated May 28, 2025, and according to the program are free of viruses.

Date: May 29, 2025

<u>/s/ Anya Bidwell</u>
Anya Bidwell
INSTITUTE FOR JUSTICE

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2025, I electronically filed a copy of the foregoing brief and the following attachments with the Clerk of the United States Court of Appeals for the Tenth Circuit using the Court's appellate CM/ECF system. I further certify that all participants are registered CM/ECF users who will be served by the appellate CM/ECF system.

Date: May 29, 2025

/s/ Anya Bidwell
Anya Bidwell
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
*Counsel for Appellant*