**No. 25-01081**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MICHAEL MENDENHALL

*Plaintiff-Appellant,*

v.

CITY AND COUNTY OF DENVER,

*Defendant-Appellee*

On Appeal from the United States District Court
For the District of Colorado
District Court No. 24-cv-574-PAB-NRN
The Honorable Philip A. Brimmer

**RESPONSE BRIEF OF APPELLEE CITY AND COUNTY OF DENVER**

Kevin Sobczyk
Assistant City Attorney
Denver City Attorney's Office
201 West Colfax Ave., Dept. 1108
Denver, CO 80202-5332
(720) 913-3100
kevin.sobczyk@denvergov.org

*Counsel for Appellee*

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF PRIOR OR RELATED APPEALS .............................. 1

STATEMENT OF THE CASE ................................................................. 1

SUMMARY OF ARGUMENT ................................................................. 6

ARGUMENT ........................................................................................... 8

    I.     Appellant's First Issue, as Styled, Was Not Properly Preserved for This Appeal. ...................................................................... 8

    II.    The Parties, Trial Court, the Supreme Court and This Court's Longstanding Precedent Are All in Agreement that Appellant's Claims Are Not Legally Viable. ........................................... 10

      A.   In Following *Jones* and Affirming the Trial Court's Ruling, There Are No Unresolved Issues for this Court to Decide. ..... 13

    III.   Appellant Misunderstands the Purpose Behind the Fourth Amendment's Oath or Affirmation Clause. ......................................... 15

    IV.   Appellant's Cited Cases Are Distinguishable and Do Not Show That *Jones* Was Wrongly Decided. ...................................... 21

      A.   Appellant's Cases From the 1800's Are Not Proper Authorities Requiring Firsthand Knowledge Under the Warrant Clause. 22

      B.   Appellant's 1900's Era Federal Cases Also Fail to Establish the Requirement for Firsthand Knowledge in the Warrant Clause. ................................................................................. 26

      C.   No Supreme Court Decision Stands for Such a Proposition Either. ...................................................................... 28

ii

V.      Appellants Remaining Arguments Are Inapplicable to His Case or Lack Factual Support. ........................................... 31

   A.    Cases of Executed Warrants Based on Unreliable Informant Hearsay Are Irrelevant to Appellant's Case. ........................... 31

   B.    Appellant's Final Argument That *Jones* Was Decided on Improper Policy Considerations and For Convenience Has No Basis in Fact or Law. ............................................................. 34

   VI.   Appellant Fails to Establish a Basis to Overcome *Stare Decisis*. ................................................................................................ 35

VII.    Denver's Other Motion to Dismiss Arguments Were Also Dispositive for Dismissing Appellant's Amended Complaint. ........... 37

   A. Appellant failed to state a plausible municipal liability claim against Denver. ..................................................................... 37

   B. No formal regulation or policy allowing officers to rely on hearsay in probable cause statements exists, only an insufficiently pled custom or practice. ................................................................ 38

   C.    Appellant fails to plausibly allege that Denver acted with deliberate indifference. ................................................................ 41

   D.    Appellant failed to plausibly allege causation. .......................... 43

VIII.   The *Amici Curiae* Briefs Alleging Search Warrant Harms Caused by Hearsay Reliance Are Distinguishable and Do Not Require Reversal of *Jones*. ...................................................................... 44

   A.    The NPAP *Amici Curiae* Concerns Other Search Warrant Issues Unrelated to *Jones*. ...................................................... 45

   B.    The Civil Rights Attorneys' Amici Curiae Arguments Are Too Dissimilar to Appellant's Case to Be Relevant. ....................... 47

   C.    Mr. Walker and Ms. Young's Cases Are Not of the Same Nature as Appellant's Issues. ............................................................... 49

CONCLUSION ...................................................................................... 52

STATEMENT OF ORAL ARGUMENT ................................................. 52

CERTIFICATE OF COMPLIANCE ............................................... 54

CONSTITUTIONAL AND STATUTORY ADDENDUM .................. 55

RULE AND REGULATORY ADDENDUM ................................... 57

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY
REDACTION .............................................................................. 59

CERTIFICATE OF SERVICE ................................................... 60

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*, 521 U.S. 203 (1997) ……………………………13, 14

*Arizona v. Rumsey*, 467 U.S. 203 (1984) …………………………….. 35

*Armijo v. Hayes*, No. CV 14-0362 JB/CG, 2016 WL 1169310 (D.N.M. Mar. 11, 2016) ..………………………………………………………....19

*Arnold v. City of Olathe, Kansas*, 35 F.4th 778 (10th Cir.2022) ... 5, 37, 41

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ……………………………… 40

*Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.,* 100 F.3d 792 (10th Cir.1996) …………………………………………………… 9

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) …………………… 41

*Bd. of Cty. Comm'rs of Bryan Cty.,Okl. v. Brown*, 520 U.S. 397(1997) .. 43

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ……………… 10, 40

*Birchfield v. North Dakota*, 579 U.S. 438 (2016) …………………… 35

*Bounkham Phonesavanh et al. (Plaintiffs) v. Nikki Autry et al. (Defendants)*, Case No. 2:15-CV-0024-RWS, N.D. Ga. (filed Sept. 22, 2015) ……………………………………………………………… 48

*Brigham City v. Stuart,* 547 U.S. 398 (2006) ……………………….. 35

*Brinegar v. United States*, 338 U.S. 160 (1949) …………….. 18, 23, 28, 29

*Bryson v. City of Okla. City*, 627 F.3d 784 (10th Cir. 2010) ……...… 38, 39

*Carroll v. United States*, 267 U.S. 132 (1925) ……………………… 28

v

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) .. 42

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) .......................... 43

*Crawford v. Washington,* 541 U.S. 36 (2004) ………………..……………. 17

*Draper v. United States*, 358 U.S. 307 (1959) ....... 9, 11, 12, 27, 28, 29, 47

*Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192 (10th Cir. 2020) … 41

*Ex parte Bollman*, 8 U.S. 75 (1807) ......................................... 22, 23

*Finch v. Rapp*, 38 F.4th 1234 (10th Cir. 2022) ....................... 37, 41, 42

*Gamble v. United States,* 587 U.S. 678 (2019) ............................. 35, 36

*Giles v. United States*, 284 F. 208 (1st Cir. 1922) ………………………... 26

*Giordenello v. United States*, 357 U.S. 480 (1958) ........................ 30, 31

*Grau v. United States,* 287 U.S. 124 (1932) …………………….............. 29

*Illinois v. Gates*, 462 U.S. 213 (1983) …………………………….... 17, 31

*In re Rule of Court*, 20 F. Cas. 1336 (C.C.N.D. Ga. 1877) ............. 24, 25

*Irizarry v. City & Cnty. of Denver*, 661 F.Supp.3d 1073 (D.Colo.2023) .. 41

*Jiron v. City of Lakewood*, 392 F.3d 410 (10th Cir. 2004) ……………… 38

*Johnson v. United States,* 333 U.S. 10 (1948) ……………………………. 17

*Jones v. United States*, 362 U.S. 257 (1960) …………………………………….. ………………….. 3, 4, 5, 9, 11, 12, 18, 21, 25, 27, 31, 34, 36, 38, 49, 50, 51

*Liveta Drummond (Plaintiff) v. Prince George's County, Maryland*, Case No. CAL20-17907, Cir. Ct. Prince George's Cnty., Md. (filed May 30, 2023) …..………………………………………………………………. 49

*McGrain v. Daugherty*, 273 U.S. 135 (1927) ................................... 30

*Miller v. United States*, 57 P. 836 (Okla. 1899) ................................. 25

*Montejo v. Louisiana*, 556 U.S. 778 (2009) .................................... 36

*Payne v. Tennessee*, 501 U.S. 808 (1991) ...................................... 35

*People v. Woods*, 485 P.2d 491 (1971) .............................................. 4

*Rice v. Ames*, 180 U.S. 371 (1901) ............................................. 29, 30

*Schencks v. United States*, 2 F.2d 185 (D.C. Cir. 1924) ................. 26, 27

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 771 (10th Cir. 2013) ............................................…................................... 42, 43

*Szabla v. City of Brooklyn Park,* 486 F.3d 385 (8th Cir. 2007) ............... 42

*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) ........... 45, 50

*United States v. Brooks*, 285 F.3d 1102 (8th Cir. 2002) ...................... 19

*United States v. Bueno-Vargas*, 383 F.3d 1104 (9th Cir. 2004) ................. ................................................................................. 18, 19, 20, 21

*United States v. Burr*, 25 F. Cas. 1 (C.C.D. Ky. 1806) ....................... 23

*United States v. Burr,* 25 F. Cas. 2 (C.C.D. Va. 1807) ................…... 23, 24

*United States v. Chavez*, 534 F.3d 1338 (10th Cir. 2008) ................... 12

*United States v. Mathis*, 357 F.3d 1200 (10th Cir. 2004) …........ 12, 13, 22

*United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868 (10th Cir. 1992) ………….…..................................……. 13

*United States v. Snow*, 919 F.2d 1458 (10th Cir. 1990) ..................... 13

*United States v. Tureaud*, 20 F. 621 (C.C.E.D. La. 1884) ............... 25

*United States v. Turner,* 558 F.2d 46 (2d Cir.1977) ............. 19, 20, 47

*United States v. Ventresca*, 380 U.S. 102 (1965) ...................... 19, 20

*United States v. Wilkinson*, 633 F.3d 938 (10th Cir. 2011) ............... 12

*Veeder v. United States*, 252 F. 414 (7th Cir. 1918) ....................... 26

*Walker v. Mather,* 959 F.2d 894 (10th Cir.1992) ............................. 8

*Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468 (1987) ..................................................................... 36

*Wilburn v. Mid-S. Health Dev.,Inc.*, 343 F.3d 1274 (10th Cir.2003) .. 8, 10

## Constitutional Provisions

U.S. Const. amend. IV. ........................................... 16, 44

CO Const. Art. II, § VII ............................................. 44

## Statutes

42 U.S.C. § 1983 .................................................. 6, 37

## Rules

Colo.R.Crim.P. 41 .................................................. 44

C.R.S. § 16-3-301 .................................................. 44

C.R.S. § 16-3-303 ……………………………………………………... 44

C.R.S. § 20-1-106.1 …………………………………………………… 44

Fed. R. Civ. P. 12(b)(6) ………………………………………….. 37, 38

## Other Authorities

*Black's* Law Dictionary 1099 (7th ed.1999) ……………………….…. 18

Denver Police Department Ops. Manual (Rev.07/16/2021) ...…… 2, 38, 39

Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603 (2022) …………………….…………………………..… 46

*2 Wayne R. LaFave*, Search & Seizure § 4.3(e) (6th ed.) ……………. 18, 19

## STATEMENT OF PRIOR OR RELATED APPEALS

There have been no prior or related appeals filed.

## STATEMENT OF THE CASE

As alleged by the Amended Complaint, in 2023, a company owned by Plaintiff-Appellant Mendenhall ("Appellant") rented a townhome located at 1748 Blake Street in Denver, Colorado. App. at 10, ¶ 14. On the evening of March 10, 2023, Appellant and a friend were at the townhome and had consumed several alcoholic beverages. at ¶ 18. When they heard people screaming or yelling outside, Appellant grabbed a baseball bat and went to the front door and the friend opened the door. *Id*. at ¶ 20. They encountered an individual, later identified as Sean Horan, sitting at the bottom of the steps. *Id*. at ¶¶ 21, 22. The two men demanded that Mr. Horan leave. *Id*. An argument ensued, which resulted in Mr. Horan calling 911 for assistance. *Id*. at 11, ¶¶ 24, 26.

Denver Police Department ("DPD") officers arrived at the scene and spoke with Mr. Horan, who advised the officers that Appellant had threatened him with a baseball bat and that he wanted to pursue charges. *Id*. at 11-12, ¶¶ 27, 29, 36. Appellant was arrested and charged with felony menacing. *Id*. at 15, ¶ 58. However, Appellant does not assert

1

any alleged constitutional violations against Denver arising out of this sequence of events.

Instead, Appellant's claims focus upon the legality of the search warrant used to search his townhome for the baseball bat he used during the incident, resulting in the seizure of the bat. Specifically, Appellant argues the search warrant affidavit ("Affidavit") prepared by DPD Detective Rocco-McKeel (the "Detective") was unconstitutional since it relied upon hearsay information learned by the on-scene officers, including statements made to them by Mr. Horan, to establish that the bat was evidence of a crime. *Id.* at 12-13, ¶¶ 45-46. The Affidavit was reviewed and approved by the Detective's supervisor *and* a deputy district attorney (the "DA"), as required by DPD policy. *Id.* at 13, ¶ 47 (citing to *DPD Ops. Manual* § 107.01(9)(a) (Rev. 07/16/2021)). On March 11, 2023, the Detective swore to the Affidavit, and a judge authorized the search warrant permitting a search of the townhome to seize the bat ("Search Warrant"). App. at 13-14, ¶¶ 49, 56. Shortly thereafter, the Detective executed the Search Warrant, entered the townhouse, found the bat, and secured it as evidence. *Id.* at 13-14, ¶¶ 50-51.

2

Appellant argues the Search Warrant was invalid because the Affidavit was based on hearsay, as the Detective "neither observed any of the relevant facts nor [had] spoken to Mr. Horan." *Id.* at 12, ¶¶ 43, 45, at 14, ¶ 56. Appellant contends the sworn Affidavit violated the Fourth Amendment's Warrant Clause requiring that warrants must be "supported by oath or affirmation." Here, the argument goes, that because the Affidavit was based only upon hearsay statements provided to the Detective and not upon the Detective's own "firsthand testimony," it was invalid. *Id.* at 14, ¶ 56; at 18, ¶¶ 79, 81. Appellant concedes the Affidavit was in all respects compliant with the holding in *Jones v. United States*, 362 U.S. 257 (1960). *Id.* at ¶ 83. However, he contends *Jones* was wrongly decided and should now be overturned, because it misunderstood the oath or affirmation requirement in the Warrant Clause, which allegedly precludes altogether hearsay to support probable cause. *Id.* at 18-19, ¶¶ 81-83.

Appellant reasons that if *Jones* is overturned, and the Search Warrant declared invalid, the search of his townhome and seizure of his bat violated his Fourth Amendment rights against unreasonable searches. *Id.* at 18-19, ¶¶ 77, 84. By extension, Appellant contends the

City and County of Denver (hereinafter "Denver") would be liable because, through DPD, it "maintains a written policy, custom, and practice" of permitting the use of hearsay to show probable cause for the issuance and execution of search warrants. *Id.* at ¶¶ 71-72.

Appellant does not allege the presence of falsehoods, material omissions, or any other possible forms of misconduct in the warrant application process. There are also no allegations of constitutionally violative misconduct in how the Search Warrant was executed. Appellant further acknowledges that the methodology for preparing the Affidavit was entirely consistent with Colorado law, which mirrors *Jones* and its progeny. *Id.* at 16, ¶ 66; *People v. Woods*, 485 P.2d 491 (1971). Nor does Appellant dispute the bat seized was the one he used in connection with the subject incident.

Denver moved to dismiss Appellant's claims since the Affidavit based upon hearsay is expressly authorized under both Colorado and U.S. Supreme Court precedent, so there can be no claim for a constitutional violation. *Id.* at 27-30. Additionally, Denver asserted Appellant failed to state a plausible municipal liability claim since there are no proper pleadings showing an offending policy, procedure, custom,

or practice; deliberate indifference; or causation. *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022); App. at 30-37.

District Court Judge Brimmer concluded that use of hearsay in a search warrant affidavit is proper and granted Denver's Motion to Dismiss *Id.* at 50-52. In doing so, the trial court did not address any of Denver's other arguments concerning the asserted myriad pleading insufficiencies for establishing a municipal liability claim. App. at 50.

On appeal, Appellant now appears to try and soften his argument by claiming the Affidavit improperly relied on "uncorroborated hearsay" which does not comply with the "Oath and affirmation" participial phrase or proviso found within the Warrant Clause. Appellant's Opening Brief ("Br.") at 2, 7-12. Appellant also continues to argue *Jones* musts be overturned. Of critical import to this Court's inquiry, Appellant "concedes that this Court is bound by *Jones* and must affirm the district court's decision granting Denver's motion to dismiss." Br. at 11. Thus, both sides agree that this Court must affirm the district court's granting of Denver's Motion to Dismiss. In light of this concession and given the fact this Court lacks jurisdiction to overturn *Jones,* the matter should be summarily affirmed.

5

## SUMMARY OF ARGUMENT

The District Court correctly followed *Jones* and dismissed Appellant's 42 U.S.C. § 1983 *Monell* claims against Denver since hearsay evidence may form the basis for search warrant probable cause, as also conceded by Appellant. In following *Jones*, the trial court also followed the Tenth Circuit's long history of repeatedly upholding that same principal, including recognizing that multiple layers of hearsay may even support search warrant probable cause.

Where Appellant agrees that this Court is likewise bound by *Jones*, it need not engage any further with Mendenhall's arguments on the issues, which he claims are meant for the U.S. Supreme Court. The matter should be summarily affirmed. Appellant presents no legal authority upon which this Court might overturn *Jones*, and none exists. Such decisions lie within the exclusive purview of the Supreme Court.

Moreover, Appellant misunderstands the Oath and Affirmation portion of the Warrant Clause. Federal courts have long held that its meaning is less exacting than Appellant urges. It simply means an affiant must swear to the contents of their affidavit or testimony, so the penalty of perjury attaches should falsities later be discovered.

6

Case law and other authorities relied upon by Appellant as prohibiting hearsay are distinguishable, unpersuasive, and do not undermine *Jones*, which is grounded in the cornerstone of the Fourth Amendment, reasonableness. Nor do those cases or authorities overcome *stare decisis*. Similarly, reference to unrelated search warrants based on hearsay from informants and which later resulted in death and other injuries when the warrants were executed have no probative value here. Likewise, Appellant's claim that *Jones* was decided as some sort of policy of convenience, on behalf of law enforcement, lacks authority for such an assertion and is contrary to the rationale found within the case.

While expressly unaddressed in Judge Brimmer's dismissal order, Denver's other Motion to Dismiss arguments were also dispositive for dismissing Appellant's claims.

Lastly, the *amici curiae* briefs should be disregarded as distinguishable from Appellant's case. Nor do they support a reversal of *Jones* in order to mete out justice in this case. Moreover, some briefings are improper expansions of arguments already made by Appellant, effectively avoiding his word limitations.

The Court should affirm.

## ARGUMENT

### I. Appellant's First Issue, as Styled, Was Not Properly Preserved for This Appeal.

Appellant has improperly framed his first appellate issue as being whether the Search Warrant was invalid because it was "based entirely on uncorroborated hearsay." Br. at 2. Nowhere in the Amended Complaint is it ever mentioned that the Search Warrant is invalid because it was based upon "uncorroborated" hearsay. *See generally,* App. at 7-21. Nor did Appellant either raise that issue in briefing Denver's Motion to Dismiss or submit the actual Affidavit and Search Warrant for the trial court to consider if such a legal conclusion were factually justified. *See generally, Id.* at 7-21, 38-52. Thus, it was not preserved for appeal.

An issue is waived if it was not raised below in the district court. *Walker v. Mather,* 959 F.2d 894, 896 (10th Cir.1992). The Court of Appeals "will not consider a new theory 'that falls under the same general category as an argument presented [before the district court] or ... a theory that was discussed in a vague and ambiguous way.'" *Wilburn v. Mid-S. Health Dev., Inc.*, 343 F.3d 1274, 1280–81 (10th Cir. 2003)

8

(quoting *Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792, 798–99 (10th Cir.1996).

According to the Amended Complaint and without the benefit of the actual documents at issue, Appellant's claims were based entirely upon the purported factual allegations and conclusory statements arguing the Affidavit improperly relied on "hearsay," "double hearsay," and a lack of "firsthand testimony" on the part of the Detective affiant. App. at 7-9, ¶¶ 1, 7, 8; at 18-19 ¶¶ 79, 84. *Jones'* hearsay holding was not about requiring affiant corroboration of any hearsay relied on for warrant probable cause*, the hearsay merely needed to be *properly credited*. *Jones*, 362 U.S. at 269-270. While it is true that *Jones* discussed the need to corroborate the hearsay statements obtained from an informant, this case does not involve the use of an informant and *Jones* was reaffirming and applying prior Supreme Court precedent to warrant probable cause[1]. *Id.* But here

---

[1] *Jones* reaffirmed the holding in *Draper v. United States*, 358 U.S. 307 (1959), where even without a warrant, an officer may rely on information through an informant for probable cause, rather than direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. *Jones*, 362 U.S. at 269. Appellant is not challenging nor seeking reversal of *Draper* and does not discuss how an even earlier precedent on allowable hearsay for determining probable cause, which is foundational to *Jones*, is somehow incongruent with the Fourth Amendment.

9

for the first time, Appellant has seemingly changed what is allegedly violative of the Fourth Amendment's Oath or affirmation proviso, *uncorroborated* hearsay.

So, in only now presenting the first issue as a question about the propriety of *uncorroborated* hearsay in warrants, as it relates to complying with the Warrant Clause's Oath and affirmation requirement, Appellant appears to be asking for review of a *new theory* which falls under the same general category, types of hearsay, which were presented before the district court, as noted above. This is not allowed, and Appellant waived those arguments for appeal, along with the ability to seek review of the actual Affidavit (never submitted to the district court) for support of such arguments. *Wilburn*, 343 F.3d at 1280–81. Appellant's Amended Complaint, Motion to Dismiss briefings, and arguments to this panel also lack sufficient factual allegations, owing to the Affidavit not being part of the record for review, to justify such a legal characterization. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007). Accordingly, the Court should deem the first issue waived.

## II.   The Parties, Trial Court, the Supreme Court and This Court's Longstanding Precedent Are All in Agreement that Appellant's Claims Are Not Legally Viable.

10

As noted, Appellant concedes the holding in *Jones v. U.S.* is directly dispositive of the claims in this case. In *Jones*, the Supreme Court held that for purposes of establishing warrant probable cause, "an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Jones*, 362 U.S. at 269 (citing *Draper v. United States*, 358 U.S. 307 (1959)). The Court expanded on that concept as it relates to evaluating the sufficiency of hearsay alone as a basis for warrant probable cause:

> "An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented. . . .
> We conclude therefore that hearsay may be the basis for a warrant."

*Id.* at 269-271.

In *Jones*, the credited hearsay was from an unnamed narcotics informant whose information was corroborated by other matters within the affiant officer's knowledge. *Id.* at 268-269*; See also Draper*, 358 U.S. 307. Here, the credited hearsay was from a named complainant, Mr. Horan, who provided information to on-scene officers investigating Appellant for a crime involving a bat, which was relayed to the Detective

11

preparing the Affidavit. App. at 45-46, 49. Importantly, Appellant does not challenge the constitutionality of any police actions leading up to his arrest, nor the arrest itself, only that the Detective improperly used hearsay, provided by the responding officers for search warrant probable cause, in the Affidavit.[2] Br. at 5, fn. 1.

The hearsay bases supporting probable cause for the Search Warrant issued by the judge in this case are consistent with the Supreme Court's holding in *Jones* and are the same grounds the District Court found for granting dismissal, and longstanding Tenth Circuit precedent following *Jones*. App. at 70-72. Judge Brimmer noted this Court's adherence to *Jones* in his ruling:

> Since *Jones*, the Tenth Circuit has repeatedly held that "hearsay evidence may form the basis for a probable cause determination." *United States v. Mathis*, 357 F.3d 1200, 1204

---

[2] Implicit in the Detective's Affidavit is hearsay based on the investigative work of other officers, also known as the collective knowledge doctrine or "fellow officer" rule. *United States v. Wilkinson*, 633 F.3d 938, 941 (10th Cir. 2011). Such information, when properly utilized, has long been held as an acceptable form of hearsay to establish probable cause when a particular officer themselves lacks the requisite level of knowledge. *United States v. Chavez*, 534 F.3d 1338, 1345–46 (10th Cir. 2008). Again, Appellant neither challenges this hearsay doctrine nor analyzes how overturning *Jones* would impact it and other associated and long held precedents, like *Draper v. U.S.*, which have also ruled on how to weigh various forms of hearsay for establishing probable caused. *See Draper*, 358 U.S. 307.

(10th Cir. 2004); *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990); *see also United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992). Moreover, the Tenth Circuit has "recognized that multiple layers of hearsay may support a finding of probable cause for a search warrant." *Mathis*, 357 F.3d at 1204 (citing *$149,442.43 in U.S. Currency*, 965 F.2d at 874 n.3).

*Id.* at 71.

Where precedent of the Supreme Court has direct application in a case, the trial court properly followed that precedent. The decision whether to reverse its own precedent lies within the exclusive purview of the Supreme Court. *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Such is the case here and is conceded by Appellant. Br. at 11. The Court should affirm the dismissal of Appellants' claims.

## A. In Following *Jones* and Affirming the Trial Court's Ruling, There Are No Unresolved Issues for this Court to Decide.

Notwithstanding Denver's first argument *supra* concerning Appellant's waiver of the first issue, both issues on appeal and Appellant's ensuing arguments essentially concern the allegation that *Jones* was wrongly decided. *Id.* at 2, 7-12. So, if there is no dispute that the Court must affirm the District Court's dismissal order, because *Jones* controls and the issues presented can only be resolved by the U.S.

13

Supreme Court, neither issue presented and argued by Appellant need be further reviewed or ruled on by this Honorable Court.

For Appellant's first appeal issue, concerning the warrant to search his townhouse as being allegedly inconsistent with the Oath and Affirmation requirement within the Warrant Clause, to be ripe for review, *Jones* must first be overturned. As reversing *Jones* is not procedurally viable here, Appellant's arguments lack merit for any further consideration until such time as the Supreme Court decides to revisit *Jones*, if ever. *Agostini*, 521 U.S. at 237. It is, therefore, appropriate to disregard what then becomes moot Appellant arguments for this stage in the appeal. Likewise, Appellant's second issue is simply styled as arguments for overturning *Jones* directed at the Supreme Court by mostly referencing *Their* cases, a few neighboring federal circuit holdings from roughly more than a century ago, and outside historical and scholarly authorities to support that proposition. Br. at 13-37.

Resultingly, the issues presented, and Appellant's arguments talk around their current forum, the Tenth Circuit. Even in the few times Appellant actually applies his various arguments against *Jones* to support his contention that the Search Warrant was invalid, only

14

Supreme Court precedent is cited. *Id.* at 38. At no point in the Opening Brief is Tenth Circuit precedent cited to invite *any* analysis by the panel for how this jurisdiction has followed *Jones* or even applies to his case.

Appellant's Opening Brief includes a *pro forma* attachment of Judge Brimmer's at-issue dismissal Order, which details many of the Tenth Circuit's multiple holdings on these issues. *Id.* at 50-51. However, since Appellant concedes that the Tenth Circuit's interest here is to follow *Jone's* binding Supreme Court precedent to allow him to seek *certiorari* for reversing *Jones*, it does not necessarily welcome any lower court to weigh in if binding precedent should be overturned. *Id.* at 11. Appellant gives this panel no other sufficient justification for why it should consider the merits of the alleged *Jones* issues, beyond affirming the lower court.

Therefore, this Court should simply affirm the lower court's ruling and disregard the arguments in support of finding the Search Warrant invalid and for overturning *Jones*, and, similarly, disregard any reply brief arguments which attempt to belatedly provide such grounds wholly lacking in the Opening Brief.

## III. Appellant Misunderstands the Purpose Behind the Fourth Amendment's Oath or Affirmation Clause.

Appellant seemingly misunderstands, at a fundamental level, the forms of oath or affirmation which are permitted for obtaining a warrant. Throughout Section I. of his Opening Brief, Appellant repeatedly and erroneously conflates the Fourth Amendment's Oath or affirmation proviso as synonymous with requiring "sworn firsthand testimony," somehow akin to the Sixth Amendment's Confrontation Clause, devoid of *any* concurring modern precedent. Br. at 13-22.

The Fourth Amendment's Warrant Requirement states: "[n]o warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. *U.S. Const. amend. IV.* Nowhere in that simple statement, or in the context of the entire Fourth Amendment, is it even inferred that probable cause requires "firsthand accounts sworn under oath." Nor does Appellant provide any relevant authority to support the proposition that testimony supporting probable cause must be more than "judged reliable," "[i]t must also be testimony of the sort that is sworn under oath, allowing a judge to seek the truth by examining the witness directly." Br. at 16.

16

Instead, Appellant claims the Confrontation Clause, found within the Sixth Amendment, somehow provides a "direct analogy" of this apparent method of proof needed to establish warrant probable cause, as explained in *Crawford v. Washington, 541 U.S. 36, 61, 68-69 (2004).*

> A firsthand knowledge requirement serves a similar purpose in the context of applying for a warrant. Sworn testimony by a person with firsthand knowledge allows a judge to collect evidence by examining the accusing witness directly.[3]

Br. at 16.

Nowhere in the Opening Brief, does Appellant properly reconcile the fundamental differences between the less exacting probable cause

---

[3] Here, Appellant misstates the duties of a detached judicial officer in reviewing a warrant application for probable cause, as the Fourth Amendment requires. "[S]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. . . .The essential protection of the warrant requirement of the Fourth Amendment, as stated in *Johnson v. United States*, is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Illinois v. Gates*, 462 U.S. 213, 239–40, (1983) (citation omitted) (quoting *Johnson v. United States,* 333 U.S. 10, 13-14 (1948).

burden of proof applicable to Fourth Amendment analysis and the admissibility, cross-examination, and beyond a reasonable doubt concerns attendant to the Sixth Amendment. "'There is a large difference between the two things to be proved (guilt and probable cause) * * * and therefore a like difference in the quanta and modes of proof required to establish them.'" *Jones*, 362 U.S. at 270 (quoting from *Brinegar v. United States*, 338 U.S. 160, 172–73 (1949).

The Fourth Amendment's oath or affirmation[4] requirement is not directly analogous to Sixth Amendment concerns, nor does it require the examination of the person swearing the same. Rather, it simply requires an affiant swear to the truth of what they are asserting, or:

> Whether the information is transmitted to the magistrate orally or in writing, the "Oath or affirmation" clause of the Fourth Amendment requires that the information be sworn to. "No particular ceremony is necessary to constitute the act of swearing * * *."

---

[4] The definition of oath or affirmation provided by Appellant as operative here is too pedantic. Br. at 14, fn. 6. For the Court's purposes here, the Ninth Circuit provides a persuasive point of reference, *Black's Law Dictionary* 1099 (7th ed.1999), defines an oath as a solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true. *Black*'s defines an affirmation as a pledge equivalent to an oath but without reference to a supreme being or to 'swearing.'" *Bueno-Vargas*, 383 F.3d at 1110.

18

*2 Wayne R. LaFave*, Search & Seizure § 4.3(e) (6th ed.)

> A leading treatise agrees and explains that the "true test" for whether a declaration is made under oath or affirmation "is whether the procedures followed were such that perjury could be charged therein if any material allegation contained therein is false."

*United States v. Bueno-Vargas*, 383 F.3d 1104, 1111 (9th Cir. 2004)

(quoting *LaFave*, Search & Seizure § 4.3(e)); *See also Armijo v. Hayes*,

No. CV 14-0362 JB/CG, 2016 WL 1169310, at *6 (D.N.M. Mar. 11, 2016).

Other Circuits have similarly held the Oath or Affirmation Clause as also simply requiring an attestation to the truth of what is being stated. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said.") (quoting *United States v. Turner*, 558 F.2d 46, 50 (2d Cir.1977).

Multiple appellate courts and a trusted treatise define the Fourth Amendment's oath and affirmation requirement in basic terms, because that is how the text reads and it is what the Constitution demands, practical and not abstract adherence. *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Appellant seeks to invoke common law treatises from British colonial authorities dating back to the 1600's and 1700's, as

supporting the need to interpret the oath and affirmation requirement beyond its plain and practical meaning. Br. at 17-19. "Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Ventresca*, 380 U.S. at 108. Resulting, these common law authorities should be disregarded.

Moreover, the oath or affirmation requirement is not even held by federal courts as some formalized *ex parte* ritual requiring the physical presence of the person swearing to an affidavit standing before the judicial officer for review of their veracity. *Bueno-Vargas*, 383 F.3d at 1111. Rather, oaths or affirmations supporting probable cause for search warrants have been found valid when given over the telephone or facsimile machine. *Id.; Turner*, 558 F.2d at 50. Regardless of the form of the oath or affirmation, what matters for the Fourth Amendment is that the affiant can be held to account for any perjury or associated wrongdoing connected to their sworn statement. *Bueno-Vargas*, 383 F.3d at 1112.

In upholding the oath or affirmation requirement by its practical and plain meaning, commanding any warrant affiant to swear to the

truth of their probable cause statement, does not reduce the oath or affirmation clause to mere surplusage, as Appellant contends. Br. at 14.

Here, the Detective swore to the Affidavit attesting to the truth of receiving the hearsay statements from Mr. Horan and investigating officers, and the Affidavit was found sufficient by the issuing judge to support probable cause to search Appellant's home for the bat, which was evidence of a crime. App. at 14, ¶ 56.  That is all the Fourth Amendment requires, and the Detective provided probable cause to a judge for issuance of a warrant, supported by oath or affirmation. *Bueno-Vargas*, 383 F.3d at 1112.

## IV.   Appellant's Cited Cases Are Distinguishable and Do Not Show That *Jones* Was Wrongly Decided.

Appellant fails to demonstrate how this Court can find that *Jones v. U.S.* was wrongly decided. The cases cited by Appellant do not—and cannot—cite to *any* modern controlling or persuasive case, state or federal, a properly persuasive pre-*Jones* decision, or the plain text of the Fourth Amendment, that states hearsay is an insufficient basis for warrant probable cause. No such contrary authority exists at the Supreme Court level, and the Tenth Circuit has been properly following

21

*Jones* and its hearsay progeny for decades. *United States v. Mathis*, 357 F.3d 1200 (10th Cir. 2004) (collecting cases).

Nearly all the federal cases cited by Appellant are distinguishable from *Jones* in that, while most may address probable cause principles inherent in some form within the Fourth Amendment, most have nothing to do with search warrants or the Warrant clause.

### A. Appellant's Cases From the 1800's Are Not Proper Authorities Requiring Firsthand Knowledge Under the Warrant Clause.

The 1807 decision in *Ex parte Bollman* was a challenge to an order of commitment and concerned the sufficiency of what affiants swore to in establishing probable cause for that detention, not a search warrant. *Ex parte Bollman*, 8 U.S. 75, 108-110 (1807). Moreover, Appellant's reliance on *Bollman* is also misguided in that the quote, allegedly grounded in the Fourth Amendment, "[n]o belief of a fact tending to show probable cause, no hearsay, no opinion of any person, however high in office, respecting the guilt of the person accused, can be received in evidence on this examination," is merely argument from defense counsel and is neither persuasive or controlling authority. *Id.* at 110. Lastly, in *Bollman*, where Appellant highlights that two judges agreed that probable cause was

lacking based on inadmissible testimony from affiants, appears to be holding evidence needed for probable cause to the same standard as evidence sufficient to present at trial. *Id.* at 130 ("This probable cause, therefore, ought to be proved by testimony in itself legal, and which, though from the nature of the case it must be *ex parte*, ought in many other respects to be such as a court and jury might hear."). As argued above, the Supreme Court has refuted that evidence for probable cause need rise to the level of admissible evidence at trial. *Brinegar*, 338 U.S. at 172–73. As that holding is not being challenged here, cases conflating the probable cause evidentiary standard with trial evidence are inapposite for reviewing the *Jones* decision.

Likewise, the two *Burr* cases, related to *Bollman* and relied on by Appellant may facially address what evidence is sufficient to establish probable cause, they provide no guidance to support his assertion that founding era common law required firsthand knowledge for search warrant probable cause. *United States v. Burr*, 25 F. Cas. 1, 2 (C.C.D. Ky. 1806); *United States v. Burr,* 25 F. Cas. 2, 13 (C.C.D. Va. 1807)[5]. That

---

[5] The *Bollman* and *Burr* cases appear to be extraordinary proceedings concerning allegations of treason and actions undertaken by Burr in his

this set of cases concerns such a peculiar criminal proceeding, regarding a singular historical event over 200 hundred years ago, also involving a military seizure of Aaron Burr, renders them irrelevant to this inquiry. Moreover, the fact that these cases are not used as precedent in any Supreme Court Warrant Clause jurisprudence, speaks to the lack of weight they should be given here, too.

*In re Rule of Court*, 20 F. Cas. 1336 (C.C.N.D. Ga. 1877), also holds no persuasive or precedential value. Admittedly, this case does address the Fourth Amendment's Warrant Clause and holds that firsthand knowledge is required by any warrant affiants. *In re Rule of Court*, 20 F. Cas. 1336. However, it is addressing a request for a rule of court to remedy a specific issue in that district where arrest warrants for revenue law violations were found to repeatedly lack sufficient evidence of probable cause, seemingly relying on insufficiently corroborated or credited informants. *Id.* This, too, is not a search warrant case and is an order entered to address the particular problems with such arrest

---

capacity as a colonel in the U.S. Army, arrested on a warrant issued by the chief justice of the U.S. Supreme Court, also implicating seizure by military personnel at the direction of the president. *Burr,* 25 F. Cas. 2, at Synopsis.

warrants in that district. *Id.* It cites to no past precedents to support this added level of evidentiary proof for probable cause or in dismissing secondhand knowledge as not being constitutionally sufficient and appears tailored as a practical response to a very specific issue. *Id.* As such, it is inapplicable to *Jones*, as the hearsay now allowed must be properly credited. *Jones*, 362 U.S. at 269.

*United States v. Tureaud*, 20 F. 621, 624 (C.C.E.D. La. 1884), is inapplicable here, as it also does not involve search warrants, and it partly relies on the above distinguished holding from *In re Rule of Court* in requiring firsthand knowledge to obtain an arrest warrant upon a charge based on information. Likewise, *Miller v. United States*, 57 P. 836, 838 (Okla. 1899), also concerns probable cause sufficiency for arrest warrants based on information, and partly relies on *Trueaud* for judging the sufficiency of probable cause in such arrest warrants. These three cases are all dismissive of warrant affiants without firsthand knowledge but find no support in relevant Supreme Court precedent or persuasive authorities outside their respective jurisdictions or in referencing each other. They should be similarly disregarded.

25

**B. Appellant's 1900's Era Federal Cases Also Fail to Establish the Requirement for Firsthand Knowledge in the Warrant Clause.**

Moving into Appellant's distinguishable federal cases found in the 1900's, *Veeder v. United States*, 252 F. 414, 418 (7th Cir. 1918), does not address hearsay issues present in *Jones* but involved a search warrant affidavit that contained only the conclusory beliefs of the affiant with no articulated facts supporting those beliefs for probable cause. *Giles v. United States*, 284 F. 208, 214 (1st Cir. 1922), a 1922 First Circuit Prohibition case, does not directly implicate the Fourth Amendment's Warrant Clause; rather, it interprets the Espionage Act of 1918, which specifically required any probable cause statement seeking a search warrant under that Act to be supported only by evidence admissible at trial but the probable cause in that case rested solely on hearsay..

Lastly, *Schencks v. United States*, 2 F.2d 185 (D.C. Cir. 1924), requires an informant to positively allege facts under oath in support of probable cause for a search warrant. While that certainly is closer to the facts found in *Jones*, because an unsworn informant formed part of the probable cause, the Supreme Court permitted such information to form the basis for arrest probable cause without a warrant, in conjunction with

26

other corroborating information known to the affiant, a year before deciding *Jones*. *Draper*, 358 U.S. at 313. That decision is not at issue in this appeal, and it should also be considered a currently binding precedent like *Jones*. Resultingly, the rationale supporting probable cause in *Draper* would apply to *Schencks* in the application for such a warrant. *Jones* provides the rationale for going from a warrantless arrest or search to the constitutional preference for warrants:

> What we have ruled in the case of an officer who acts without a warrant governs our decision here. If an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant. If evidence of a more judicially competent or persuasive character than would have justified on officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimatize police conduct, and resort to them would ultimately be discouraged. Due regard for the safeguards governing arrests and searches counsels the contrary. In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded.

*Jones,* 362 U.S. at 270-271.

Fourth Amendment constitutional demands require practical not abstract adherence when determining probable cause. As *Draper* explains:

> "In dealing with probable cause, * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310. Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288.

*Draper*, 358 U.S. at 313.

Not extending rationale supporting warrantless probable cause, as defined by the Supreme Court *supra*, to the application for a warrant, would render the Warrant Clause based on the realities of modern police work as the practical surplusage Appellant seeks to avoid.

## C. No Supreme Court Decision Stands for Such a Proposition Either.

Appellant does not and cannot point to any properly persuasive lower federal court case or a non-distinguishable Supreme Court decision to support the assertion that *Jones* was wrongly decided. The few Supreme Court cases cited by Appellant from the early 1900's, pre-*Jones*,

also fail on that front. Appellant's reliance on dicta in *Grau v. United States,* which asserts that a search warrant may only be issued upon evidence admissible at a jury trial, is misplaced. *Grau v. United States,* 287 U.S. 124, 127-28 (1932). As previously argued, in *Brinegar*, the Supreme Court expressly rejected *Grau*'s trial-level evidentiary standard for probable cause, noting *no* precedent existed for that contention. *Brinegar*, 338 U.S. 160, 174, fn. 13 (1949).[6]

*Rice v. Ames*, 180 U.S. 371 (1901), is even less helpful on this point, because it concerns warrants and other commitment proceedings for extradition which involve international treaties, and the Court specifically declines to require firsthand knowledge, either at a hearing or in obtaining a warrant. As *Rice* states, contrary to Appellant's argument:

> We do not wish, however, to be understood as holding that, in extradition proceedings, the complaint must be sworn to by

---

[6] "For this proposition there was no authority in the decisions of this Court. It was stated in a case in which the evidence adduced to prove probable cause was not incompetent, but was insufficient to support the inference necessary to the existence of probable cause. The statement has not been repeated by this Court." *Brinegar v. United States*, 338 U.S. at 174, fn. 13 (1949); *see also Draper*, 358 U.S. at 312, fn. 4 (noting that *Brinegar* "thoroughly discredited and rejected" *Grau*'s hearsay proposition).

29

persons having actual knowledge of the offense charged. . . .
*If the officer of the foreign government has no personal
knowledge of the facts, he may with entire propriety make the
complaint upon information and belief,* stating the sources of
his information and the grounds of his belief, and annexing to
the complaint a properly certified copy of any indictment or
equivalent proceeding, which may have been found in the
foreign country, or a copy of the depositions of witnesses
having actual knowledge of the facts, taken under the treaty
and act of Congress. This will afford ample authority to the
commissioner for issuing the warrant.

*Rice*, 180 U.S. at 375-376 (*emphasis added*).

*McGrain v. Daugherty*, 273 U.S. 135, 156 (1927), is equally
distinguishable and irrelevant to this inquiry, as it does not meaningfully
interpret the Warrant Clause as Appellant suggest. Instead, it concerns
long-held practice of the U.S. Senate of issuing warrants owing to
nonresponsive subpoenaed parties, and any reference to Fourth
Amendment protections is for the need to guard against groundless
warrants, not requiring *firsthand* knowledge under oath for such
issuance. *Id.* at 156-157.

Lastly, and also contrary to Appellant's position, there is nothing
found in a plain reading of *Giordenello v. United States*, 357 U.S. 480,
485 (1958) to support the contention that the Supreme Court
"disapprovingly noted" the use of hearsay being the basis for the warrant

at issue there. In fact, beyond simply stating as a fact that it appeared the officer relied entirely on hearsay for the warrant, the Court expressly declined to rule on its propriety, "[b]ut we need not decide whether a warrant may be issued solely on hearsay information, for in any event we find this complaint defective in not providing a sufficient basis upon which a finding of probable cause could be made." *Giordenello*, 357 U.S. at 485. That was a prescient statement issued in 1958 rather than a disapproving one, because in 1960, the Court did decide that question and held that a warrant may be issued solely on hearsay information, and it has been binding reaffirmed precedent since. *Jones*, 362 U.S. 257; *See also Illinois v. Gates*, 462 U.S. at 245.

## V. Appellants Remaining Arguments Are Inapplicable to His Case or Lack Factual Support.

### A. Cases of Executed Warrants Based on Unreliable Informant Hearsay Are Irrelevant to Appellant's Case.

Appellant's other argument for overturning *Jones*, found in the Summary of the Argument section concerning the tragic loss of life of Breonna Taylor during the execution of a search warrant at her home, which Appellant claims was caused because the warrant was based on hearsay. Br. at 9-10. Appellant seems to claim his issues with *Jones* and

31

his allegedly invalid warrant are akin harms to Ms. Taylor's circumstances and "raids on the wrong homes that cause the deaths of innocent people . . . often based on thirdhand accounts of unreliable informants." *Id.* at 10. This argument is developed no further, but seemingly is connected to his "policy considerations and convenience" argument at the end of the Opening brief, so both will be addressed here. *Id.* at 36-38.

Denver does not dispute that real, sometimes irreversible, harms can and do occur when law enforcement execute warrants and make mistakes or act in bad faith, but that is neither Appellant's case here nor does it invalidate *Jones*. There is no merit to the causation argument that allowing hearsay, as *Jones* provided, is the reason Ms. Taylor and others were harmed in warrant executions. Instead, it appears to be due to unreliable informants and inaccuracies within the warrant applications owing to issues with those informants, either through falsehoods or mistakes by the affiants. In any event, regardless of whether the fault lies in that case, such as with law enforcement seeking the warrant and not being truthful, not properly crediting the hearsay, as *Jones* and its progeny required, or failing to sufficiently corroborate their informant, as

32

*Draper, Jones*, none exists here. Appellant's argument here is at its thinnest, and Denver will not have the opportunity to brief any apparent reply which expands on the topic.

However, not knowing what caused the use of an "unreliable" informant to secure a mis-executed warrant and any resulting casualties does not prevent Denver from concluding that Appellant's alleged harm has nothing to do with an unreliable informant or falls in the class of cases represented by Mr. Taylor. Mr. Horan was a fully named and credited source of the information in the Affidavit for the Search Warrant, and he specifically mentioned a bat being used by Appellant to threaten him before going back inside his townhouse. App. at 12-13, ¶¶ 45-46. The Search Warrant was to obtain that very bat within the townhouse as evidence of a crime. *Id.* The Search Warrant was executed, and a bat happened to be recovered. *Id.* at 13, ¶ 50. It is unclear what is unreliable about the information provided by Mr. Horan which resulted in the bat being seized. The fact that the charges against Appellant were subsequently dropped does not mean Mr. Horan was unreliable. *Id.* at 15, ¶ 59. Nothing in the facts of this case are in anyway related to Ms. Taylor's lamentable death or are directly attributable to *Jones* allowing

hearsay for warrant probable cause. As such, the Taylor matter cited by

Appellant should be wholly disregarded as irrelevant to this appeal.

> ### B. Appellant's Final Argument That *Jones* Was Decided on Improper Policy Considerations and For Convenience Has No Basis in Fact or Law.

Likewise, Appellant's argument that policy considerations were a

driving force in deciding *Jones* and "the heart of *Jones*'s holding is the

belief that warrants should be easier for police to obtain" is in no way

supported by the rationale provided in that decision nor does Appellant

provide a quote for such an assertion. Br. at 36. Conversely, Denver set

forth above the practical justification for allowing credited hearsay in

warrant applications, to encourage the preference for seeking a warrant

before a judicial officer. *Jones,* 362 U.S. at 270-271. So, to briefly requote

the conclusion of *Jones* rationale:

> In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded.

*Id.* at 271.

Other than conclusory statements, Appellant presents no

authorities to establish that *Jones* was a decision created for the

34

convenience of law enforcement or that any policy considerations found inherent in the *Jones*'s decision were not *reasonable*. As reasonableness is always the touchstone of any Fourth Amendment analysis. *Birchfield v. North Dakota*, 579 U.S. 438, 477 (2016) (citing to *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)). But any reckoning with the reasonableness for permitting hearsay or the actual policy implications of reversing *Jones* are completely absent from Appellant's arguments.

## VI. Appellant Fails to Establish a Basis to Overcome *Stare Decisis.*

All arguments set forth in Sections II-IV demonstrate why Appellant has completely failed to establish why *Jones* must be overturned. Overturning *Jones* requires overcoming the doctrine of *stare decisis*, which is a difficult task. *Stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles" and "contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Notably, overturning constitutional precedent "demands specific justification." *Gamble v. United States,* 587 U.S. 678, 691 (2019) (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, (1984)). "This means that something more than 'ambiguous historical evidence' is required before [the Court] will 'flatly

overrule a number of major decisions of this Court.'" *Gamble,* 587 U.S. at 691 (citing *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 479 (1987). Further, "'the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Id.* at 691 (citing *Montejo v. Louisiana*, 556 U.S. 778, 792, 129 (2009)). Appellant provides no specific justification for overturning 65 years of precedent. Moreover, the numerous cases cited by Appellant and distinguished by Denver above overwhelmingly demonstrate that Appellant has, arguably and *at best*, presented this Court only with an ambiguous historical case record that some lower federal courts read the Fourth Amendment in a more exacting fashion for what suffices for probable cause than its plain text. That is wholly insufficient to warrant overturning *Jones.*

Appellant offers no specific justifications, either from his case or citing to a relevant authority or an actually similar case, to overcome *stare decisis* for allowing hearsay as the basis for probable cause. Thus, there is no basis overturn *Jones v. United States* to consider the Search Warrant here invalid. The district court ruling should be affirmed, and *Jones* reaffirmed.

## VII. Denver's Other Motion to Dismiss Arguments Were Also Dispositive for Dismissing Appellant's Amended Complaint.

If for some reason the Court were to find Judge Brimmer's basis for granting Denver's motion to dismiss as insufficient, Denver argues that the other arguments in support of dismissal, which were expressly unaddressed by the district court, are also dispositive for affirming the dismissal, under Fed. R. Civ. P. 12(b)(6).

### A. Appellant failed to state a plausible municipal liability claim against Denver.

To state a plausible claim for municipal liability, Appellant must present allegations sufficient to show that: "(1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022); *see also Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022).[7] The Amended Complaint fails to present plausible

---

[7] Appellee relies on a different, more recent Tenth Circuit precedent for establishing the elements of municipal liability under § 1983 than found in Judge Brimmer's order. *Arnold*, 35 F.4th at 795; App. at 49. Denver still asserts the District Court was correct in finding no constitutional violation, in following *Jones,* which means there can be no claim for relief

allegations sufficient to support any required elements for municipal

liability. App. at 7-21.

**B. No formal regulation or policy allowing officers to rely on hearsay in probable cause statements exists, only an insufficiently pled custom or practice.**

Here, Appellant alleged Denver had a formal policy and a

widespread, permanent, and a well-settled custom allowing officers to

use hearsay in probable cause statements. But he does not point to an

applicable policy or properly plead any custom. *Bryson v. City of Okla.

City*, 627 F.3d 784, 788 (10th Cir. 2010)).

Citing § 107.01(8)(e) of the DPD Operations Manual, the Amended

Complaint appears to assert this provision authorizes reliance on

hearsay to show probable cause in the issuance and execution of search

and arrest warrants. App. at 13-17 ¶¶ 48, 61, 73. But nowhere in that

section, or anywhere else in the Ops Manual, is there *any* formal policy

that expressly authorizes the use of hearsay to show probable cause in

---

against the municipality and the dismissal was proper, under Rule
12(b)(6). However, Denver does not believe that Judge Brimmer's
municipal liability elements were the correct standard for establishing
municipal liability. *Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th
Cir. 2004). But even by the municipal liability elements set forth in *Jiron*,
Appellant still did not plead the causation element either, as further
argued below in Section D. *Jiron,* 392 F.3d at 419.

the issuance and execution of search and arrest warrants. Nor is there an explicit reference to the term "hearsay." [*Id.*]; *See also Ops. Manual* § 107.00 (Rev. 07/16/2021)[8]. While the policy appears to relate to the informant reliability portion of the *Jones* holding, it is inapplicable to the facts in this case. *Jones*, 362 U.S. at 268-270. Mr. Horan is not an informant as contemplated by this specific provision because an "informant" is a law enforcement term of art referring to an *unnamed* individual providing information aiding an officer's investigation. *Id.* at 268-270. Mr. Horan's hearsay statements were included in the Affidavit as a named complainant which is entirely different from a DPD informant, as contemplated by § 107.01(8)(e).[9] Thus, the Amended Complaint fails to point to a sufficient factual basis to support the claim that Denver had a *formal* policy allowing officers to rely on the type of hearsay applicable to this case. *Bryson*, 627 F.3d at 788.

---

[8] § 107.01(8)(e) states, "[t]he officer may rely upon information received through an *informant*, rather than upon direct observations, to show probable cause" (*emphasis added*). *Ops. Manual* § 107.01(8)(e) (Rev. 07/16/2021).

[9] The Ops Manual has a section devoted to DPD's use of informants in investigations, including informant supervision, compensation, classifications, and record keeping, which are conditions clearly not applicable to Mr. Horan as a random 911 caller. *Ops. Manual* § 302.14.

39

Without a formal policy, Appellant must rely on his allegations that an unofficial policy or custom allowing such hearsay use existed. *Id.* To that end, Appellant also alleges "pervasive" use of hearsay by named and unnamed "informants" in hundreds of recent search warrants issued by the "Denver District/County Court" within the last two years. App. at 15-16, ¶¶ 62-66. Beyond generalities, Appellant neither identifies nor provides a single detail about any of these warrants. It is unhelpful and conclusory to simply plead that he (or his counsel) conducted a review of "100s of search warrants" and concluded that in April of 2024, "at least 10 relied almost entirely upon hearsay to establish probable cause," without attaching the alleged offending affidavits, some facts contained within those probable cause statements to support his assertions, or even case names. *Id.* at 15 ¶ 62]; *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Without more, the Amended Complaint simply relies on its own hearsay and "'naked assertion[s]' devoid of 'further factual enhancement'" concerning an alleged offending Denver custom or practice. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This is insufficient to sustain either municipal liability claim, is dispositive for dismissal, and affirms the dismissal by the district court.

40

### C. Appellant fails to plausibly allege that Denver acted with deliberate indifference.

Even assuming *arguendo,* that the Amended Complaint properly pled a Denver policy allowing hearsay in search warrant affidavits, Appellant's allegations also fall far short of plausibly asserting that Denver acted with deliberate indifference. "Deliberate indifference is an exacting standard of fault." *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1095 (D. Colo. 2023). "To demonstrate that a municipality acted with deliberate indifference, an Appellant may show that the municipality had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *Finch*, 38 F.4th at 1244 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Despite Appellant's assertion that deliberate indifference is not a necessary element for municipal liability, the Tenth Circuit has repeatedly held that proof of a municipality's deliberate indifference of constitutional violations is required. *E.g., Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022); *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022); *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1205

41

(10th Cir. 2020); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 771 (10th Cir. 2013).

In this case, Appellant would need to allege sufficient facts to demonstrate that Denver knew or should have known that its "policy" of allowing DPD officers to include hearsay information in their applications for search warrants was substantially certain to result in a constitutional violation and that Denver consciously or deliberately chose to disregard the risk of harm. *Finch*, 38 F.4th at 1244. Appellant pleads no such facts, nor could he in light of *Jones*. Moreover, by conceding that this Court must follow *Jones* and affirm the dismissal, Appellant essentially admits that it was reasonable for Denver to rely on *Jones* and to believe that using hearsay in search warrant probable cause statements was constitutional.[10]

By his own admission, Appellant fails to show how Denver could have known that an application of a constitutional policy was

---

[10] Denver cannot be deliberately indifferent for uncontested facially constitutional policies, especially when the asserted right is not clearly established. *See Szabla v. City of Brooklyn Park,* 486 F.3d 385, 392-394 (8th Cir. 2007) (en banc); *cited to in Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279–80 (10th Cir. 2009) (discussing issues related to municipal liability for the discretionary exercise of constitutional policies allegedly applied in unconstitutional ways).

substantially certain to result in a constitutional violation and that Denver "'consciously or deliberately [chose] to disregard the risk of harm.'" *Id.*

### D. Appellant failed to plausibly allege causation.

Lastly, where an Appellant claims that the municipality has not "directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013)* (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)). Thus, to establish causation, Appellant must show a "direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 405. And that the municipality's conduct is "closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Here, Appellant fails to establish a direct causal link between Denver's alleged hearsay policy in warrant applications and an unconstitutional search.

Appellant pleads no facts to show that any Denver policy was directly responsible for the ultimate approval by the DA and issuance of

the Search Warrant by the Judge, both acting in accordance with their own independent mandates[11], thereby negating a direct causal link to the alleged claims. The Detective searched the townhouse and seized the bat by relying on the judicially issued Search Warrant. Absent far more,[12] Appellant cannot show that the any policy of Denver directly caused the issuance of the Search Warrant, if the DA and Judge were also independently following *Jones*.

## VIII. The *Amici Curiae* Briefs Alleging Search Warrant Harms Caused by Hearsay Reliance Are Distinguishable and Do Not Require Reversal of *Jones*.

On July 1, 2025, the Court provisionally granted the filing of *amici curiae* briefs from the following parties: the National Police Accountability Project (the "NPAP"); the Civil Rights Attorneys; and Kenneth Walker and Anjanette Young ("Mr. Walker and Ms. Young"). [CTA10 Dkt. No. 043]. The respective briefs all support Appellant's position that *Jones* should be overturned due to harms caused by search warrants, which to varying degrees allegedly had issues with the reliance

---

[11] U.S. Const. amend. IV; *See also* CO Const. Art. II, § VII; C.R.S. §§ 16-3-301, 303; 20-1-106.1; Colo.R.Crim.P. 41.
[12] Appellant does not plead any false statements, fatal omissions, or other defects within the Affidavit to invalidate the probable cause on any other grounds.

on hearsay for probable cause. *See generally* [CTA10 Dkt. Nos. 044, 048, 053]. The *amici* briefs, as individually argued below, are both distinguishable from Appellant's case and other issues, unrelated to *Jones*, appear to be the principal cause of any alleged harm, not simply because hearsay was relied on. Denver does not mean to minimize the human cost of any actual police misconduct owing to the misuse or mis-execution of search warrants, but these *amici curiae* do not relevantly address the issues presented and should be disregarded.[13]

### A. The NPAP *Amici Curiae* Concerns Other Search Warrant Issues Unrelated to *Jones.*

The NPAP Brief attempts to link its arguments to Appellant's issues by generally arguing against the use of informants for search warrant probable cause and citing to the law review article of one of the original attorneys for Appellant, ". . . [i]n particular, inaccurate

---

[13] On July 3, 2025, the Court provisionally accepted the Criminal Law and Evidence Scholars' *amici curiae* filing, after their motion to reconsider was granted. [CTA10 Dkt. Nos. 62, 65]. The brief appears to be unchanged from its original filing, *see generally* [CTA10 Dkt. Nos. 037-2, 65]. So, Denver stands on its objection that the briefing is undesired due to their arguments simply expanding Appellant's word limit in reiterating his existing historical context arguments, which is disfavored in *amici curiea.* [CTA10 Dkt. No. 041, at 8-11]. *See also United States v. Ackerman*, 831 F.3d 1292, 1299 (10th Cir. 2016).

informant statements often serve as the sole probable cause evidence to support house raids." *See* Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603, 610 (2022)." [CTA10 Dkt. Nos. 044, at 3]. However, the rest of the brief concerns complaints about issues related to how search warrants are reviewed and executed. *Id.* at 4-19.

The NPAP take issue with the unreliability of confidential informants, and the dangers of no-knock and "barely knock" warrants that can be issued from such possibly faulty information. *Id.* at 4-10. The NPAP also argues about the difficulty in challenging alleged illegal searches and the trouble with deficient judicial review of search warrant applications, including newer issues like E-warrants. *Id.* at 11-19.

None of these issues are present in Appellant's case. Principally, the basis for much of the hearsay in the Affidavit is not a confidential informant, but a named complainant seeking charges against Appellant. App. at 11-12, ¶¶ 27, 29, 36. Appellant makes no complaint about how the judicial officer reviewed the Affidavit and Search Warrant before authorizing the search, nor was the search warrant a no-knock or barely knock type to be relevant here.

Issues with corroboration of informants being the basis of information for probable cause was only reaffirmed by *Jones*, but originally held by *Draper v. United States*. *Draper*, 358 U.S. 307. That situation, like so many other associated hearsay precedents necessarily related to Fourth Amendment probable cause analysis, is not at issue here. Likewise, concerns about E-warrants are better addressed in reviewing cases like *United States v. Turner,* which found warrant applications valid when made over the phone or via fax. *Turner,* 558 F.2d at 50.

None of NPAP's arguments are specifically directed at Appellant's facts nor can be remedied by simply reversing *Jones*. Therefore, they should be disregarded as irrelevant to the issues presented.

## B. The Civil Rights Attorneys' Amici Curiae Arguments Are Too Dissimilar to Appellant's Case to Be Relevant.

Similarly, the Civil Rights Attorneys' Brief it too dissimilar to Appellant's issues with *Jones* as it relates to the search of his townhouse. [CTA10 Dkt. No. 048]. In their Brief, they merely make blanket statements identical to Appellant's claim, which rely only on Prof. Sacharoff's law review article, that, "[a]s originally understood, the oath requirement required sworn firsthand witness testimony. *Id.* at 5, fn. 4.

47

Citing no other authorities, the Brief repeats Appellant's assertion that the oath requirement was "sapped" by *Jones*. *Id.* at 6. The Civil Rights Attorneys', by way of example, then reference two tragic search warrants executed upon probable cause relying on hearsay from apparently dubious informants and reckless police officers. *Id.* at 8-20.

In the "Case of Baby 'Bou Bou' Bounkham Phonesavanh" example, a baby was severely injured by a flash grenade deployed during the execution of a search warrant. *Id.* at 8-10. *See also Bounkham Phonesavanh et al. (Plaintiffs) v. Nikki Autry et al. (Defendants), Case No. 2:15-CV-0024-RWS, N.D. Ga. (filed Sept. 22, 2015)*. Much of the information for that search warrant came from an informant described as "true and reliable," but the confidential informant had only been in use less than a week and the corroboration, such as it was, by the affiant officer lacked sufficient due diligence. *Id.* at 11-12. According to a grand jury investigation, the harm caused to the child was attributed to "well-intentioned people getting in too big a hurry, and not slowing down and taking enough time to consider the possible consequences of their actions." *Id.* at 12.

In the Drummond example, the harm to the search warrant victim was caused by a non-knock search warrant resulting in damages, based on information from an alleged uncorroborated confidential informant and possibly fabricated information on the part of the affiant detective. *Id.* at 15-18; *See also Liveta Drummond (Plaintiff) v. Prince George's County, Maryland*, Case No. CAL20-17907, Cir. Ct. Prince George's Cnty., Md. (filed May 30, 2023).

Similar to the issues with the NPAP Brief, the alleged harms were not caused by *Jones*, rather, in both cases the issues with the information relied on for probable cause was due to improper informant corroboration or outright fabrication by the affiant, which concerns the underlying holding in *Draper* and not in being reaffirmed, as applied in *Jones. Jones*, 362 U.S. at 269. An informant was not the source of information relied on in Appellants case. App. at 11-12, ¶¶ 27, 29, 36. Moreover, the relevance is further diminished by the fact that the Search Warrant was not improperly executed nor caused actual damages to Appellant. These *amici curiae*'s arguments should also be disregarded as distinguishable from the issues presented.

### C. Mr. Walker and Ms. Young's Cases Are Not of the Same Nature as Appellant's Issues.

49

Lastly, Mr. Walker and Ms. Young's Brief is also too dissimilar to Appellant's case and the issues presented to be relevant for considering reversal of *Jones*. [CTA10 Dkt. No. 053].

Mr. Walker's case (Breona Taylor) is the same incident briefly touched on by Appellant as an example of a search warrant gone tragically wrong, allegedly due to the issues caused by *Jones*. Br. at 9-10. While its inclusion here is objectionable as an improper expansion on Appellant's word limitations and discusses the very same case to make virtually the same argument in support of reversing *Jones*, it is also a distinguishable fact pattern from Appellant's case and the issues. *Ackerman*, 831 F.3d at 1299. Ms. Taylor's tragic death was the result of some type of late night no-knock or barely knock warrant, where apparently the police did not announce themselves and Mr. Walker fired his weapon at unknown intruders, the breaching entry officers, which resulted in return gunfire and ultimately Ms. Taylor's fatal injury. [CTA10 Dkt. No. 053, at 9-10]. The search warrant for that police raid relied on the apparent false hearsay statement of a postal inspector, which was reportedly fabricated by the affiant. *Id.* at 15.

None of the facts and circumstances surrounding Ms. Taylor's death due to the search warrant execution of the hearsay relied on bears any relation to Appellant's case and the issue presented. *Jones* allowing properly credited hearsay as a basis for search warrant probable cause did not authorize an officer to fabricate a hearsay statement or permit the type of unannounced entry which occasioned the volley of gunfire that killed Ms. Taylor. *Jones*, 362 U.S. at 269-270. Nor does citing to one tragic example justify the claim that, "[b]y incentivizing affiants to fabricate conversations in order to obtain the warrants they seek, *Jones* has undoubtedly given rise to an increase in wrongful raids on the homes of the innocent." *Id.* at 18. Mr. Walker's complaints lie with the local police force, their search warrant execution procedures, and the conduct of specific officers, not *Jones* and its progeny.

Ms. Youngs' case is entirely unrelated to Appellant's case and *Jones*. The search warrant that resulted in her lamentable harms was not probable cause based on hearsay, rather the source of the information who provided the wrong address and was a J.Doe who "swore to the complaint and was made available to judge for questioning." *Id.* at 26-27, Fn. 77. Based on Appellant's first issue presented and own argument, the

51

search warrant was properly issued because the J.Doe would have had firsthand knowledge and swore to it before a judge. Br. at 2.

As with all the other amici curiae and supporting examples, there is no direct relation to Appellant's case or as it relates to the issues presented. Thus, Mr. Walker and Ms. Young's Brief should also be disregarded for lacking relevance to the issues presented by Appellant.

## CONCLUSION

For the foregoing reasons, the District Court's Order should be affirmed.

## STATEMENT OF ORAL ARGUMENT

As Appellant concurs that Jones is directly applicable to the issues before the Court which mandate affirming the district court's order, Denver does not believe Oral Argument will assist the decision-making process.

Dated this 7th day of July 2025.

Respectfully submitted,

*/s/ Kevin Sobczyk*
Kevin Sobczyk
Assistant City Attorney
Denver City Attorney's Office

201 West Colfax Ave., Dept. 1108
Denver, CO 80202-5332
kevin.sobczyk@denvergov.org
Phone: (720) 913-3100
Fax: (720) 913-3155

*Counsel for Defendant-Appellee City
and County of Denver*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 11,929 words. I relied on my word processor, Microsoft Word, to obtain the count.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO and 14-point Century Schoolbook font.

Dated July 7, 2025

By:     *s/Kevin Sobczyk*
Denver City Attorney's Office

54

## CONSTITUTIONAL AND STATUTORY ADDENDUM

Article II, Section VII of the Colorado State Constitution, provides in pertinent part:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Title 16, Article 3, Section 301 of the Colorado Revised Statutes, provides in pertinent part:

> **(1)** A search warrant authorized by this section may be issued by any judge of a court of record.
> **(2)** A search warrant may be issued under this section to search for and seize any property: . . . |
>> **(b)** Which is designed or intended for use as a means of committing a criminal offense; or
>> **(c)** Which is or has been used as a means of committing a criminal offense; or
>> **(d)** The possession of which is illegal; or
>> **(e)** Which would be material evidence in a subsequent criminal prosecution in this state or in another state; or
>> **(f)** The seizure of which is expressly required, authorized, or permitted by any statute of this state; or
>>
>> . . .

55

Title 16, Article 3, Section 303 of the Colorado Revised Statutes, provides in pertinent part:

> **(1)** A search warrant shall issue only on affidavit sworn to or affirmed before the judge and relating facts sufficient to:
>> **(a)** Identify or describe, as nearly as may be, the premises, person, place, or thing to be searched;
>> **(b)** Identify or describe, as nearly as may be, the property to be searched for, seized, or inspected;
>> **(c)** Establish the grounds for issuance of the warrant or probable cause to believe that such grounds exist; and
>> **(d)** Establish probable cause to believe that the property to be searched for, seized, or inspected is located at, in, or upon the premises, person, place, or thing to be searched.
>
> **(2)** The affidavit required by this section may include sworn testimony reduced to writing and signed under oath by the witness giving the testimony before issuance of the warrant. A copy of the affidavit and a copy of the transcript of testimony taken in support of the request for a search warrant shall be attached to the search warrant filed with the court.

Title 20, Article 1, Section 106.1 of the Colorado Revised Statutes, provides in pertinent part:

> **(1)** The district attorneys of the several judicial districts in the state of Colorado shall:
>
>> **(a)** Render, in their quasi-judicial capacity, legal advice to peace officers, upon the request of such officers or of the court, pertaining to the preparation and review of affidavits and warrants for arrests, searches, seizures, nontestimonial identification items, and court orders for the production of records; . . .

## RULE AND REGULATORY ADDENDUM

Section 107.01 (Search Warrants), Subsection (8) (Probable Cause), Subpart (e.), of the Denver Police Department Operations Manual, provides in pertinent part:

**e.** The officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause.

**1.** The informant's statement or information must be reasonable, corroborated by other matters within the officer's knowledge.

**2.** When information is received from a reliable informant, the affidavit should state that the informant is a person whose information in the past has proven to be reliable. Also, state the area in which he/she has given information and the number of times. The former reliability of the informant is reasonable corroboration on the part of the officer.

**3.** Probable cause is not sufficient when an informant who is new and not one with whom an officer has dealt with in the past merely provides information. The information must be corroborated by some independent investigation or knowledge on the part of the officer.

**4.** When a new informant supplies information, the officer must corroborate this information and state these facts in the affidavit.

Section 302.14 (Investigation Funds and Informant Use, Supervision and Compensation), of the Denver Police Department Operations Manual, provides in pertinent part:

**(1)** The Commander of Investigative Support Division shall establish guidelines in the form of written Directives to govern investigative funds and the use, supervision, and compensation of informants. These Directives will cover the following:

. . .

57

**(3)** A Directive for the use, supervision, and compensation of informants will identify the importance of the use of informants, categories of informants and informant classifications.

> **a.** Restrictions will be established for using certain types of criminals and juveniles as informants.
>
> **b.** Supervisors must be aware of agreements between subordinates and informants.
>
> **c.** Compensation for informants in the form of pay, dismissal of cases or appearances on their behalf must follow the Directive guidelines.
>
> **d.** Informant record keeping, codes, and file security will be covered in the Directive.

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTION

I hereby certify that with respect to the foregoing:

(1)    All required privacy redactions have been made per 10th Cir. R. 25.5;

(2)    if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3)    the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, CrowdStrike Windows Sensor, and according to the program are free of viruses.

Dated July 7, 2025

By:    *s/Kevin Sobczyk*
       Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July 2025, I electronically filed the foregoing **RESPONSE BRIEF OF APPELLEE CITY AND COUNTY OF DENVER** using the court's CM/ECF system which will send notification of such filing to the following:

*s/ Michele Imes*
Denver City Attorney's Office